Eleanor RENSTROM, Appellant,

v.

INDEPENDENT SCHOOL DISTRICT NO. 261, Ashby, Minnesota, Independent School District No. 208, Evansville, Minnesota, Respondents.

No. C1–86–179.

Court of Appeals of Minnesota.

July 8, 1986.

Marko Mrkonich, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, for Eleanor Renstrom.

David S. Bartel, Knutson, Flynn & Hetland, P.A., St. Paul, for Independent School Dist. No. 261.

Tracy E. Mitchell, Elbow Lake, for Independent School Dist. No. 208.

Heard, considered and decided by NIERENGARTEN, P.J., and LANSING and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Appellant Eleanor Renstrom brought a declaratory judgment action asking the trial court to determine her rights and the rights of the respondents, Ashby and Ev-

ansville school districts, under Minn.Stat. § 122.541 (1984). On appeal, Renstrom argues that the trial court erred when it determined (1) that Minn.Stat. § 122.541 did not apply to the facts of the case; (2) that the two school districts had entered into a valid Joint Powers Agreement; and (3) that Renstrom was not entitled to reinstatement under Minn.Stat. § 125.12, subd. 6b(e) (1984). We affirm.

## FACTS

Eleanor Renstrom was a full-time teacher in the Ashby School District from September 1966 to May 1983. She primarily taught the business education program including courses in accounting, business law, business machines, filing, business communications, business technology and record keeping.

At its May 27, 1983 meeting the Ashby school board decided to discontinue its business education program and place Renstrom on an unrequested leave of absence. Subsequently, at its August 1983 meeting, the school board decided to sign a Joint Powers Agreement under which students in the Ashby school district would be sent to the Evansville school district for two business courses.

During the 1983/84 school year the Evansville school district provided Ashby students with instruction in business law and accounting. There were 18 Ashby students and 8 Evansville students in the business law class. The first semester accounting class consisted of 12 Ashby students and one Evansville student. Second semester the class consisted of 9 Ashby students. During the 1984/85 school year only an accounting class was offered to Ashby students. There were 21 Ashby students and 2 Evansville students in this class. All of these classes were taught by an Evansville teacher with fewer years of teaching experience than Renstrom.

Renstrom was retained by the Ashby school district in a 2/7 teaching position for both the 1983/84 and 1984/85 school years.

## ISSUES

1. Is Renstrom entitled to seniority rights under Minn.Stat. § 122.541, the Interdistrict Cooperation statute?

2. Did the Evansville school district provide business classes to Ashby students under a valid Joint Powers Agreement?

3. Is Renstrom entitled to reinstatement under Minn.Stat. § 125.12?

## ANALYSIS

### I.

Minn.Stat. § 122.541, subd. 1 (1984) provides in part:

The boards of two or more school districts may, after consultation with the department of education, enter into an agreement providing for the discontinuance by a district of any of grades kindergarten through 12 or portions of those grades and the instruction in a cooperating district of the pupils in the discontinued grades or portions of grades * * *.

Renstrom contends that the Ashby school district discontinued a "portion of a grade" when it discontinued the business education program. She argues that because instruction in at least some of those discontinued classes was then provided by another school district, section 122.541 applies to the agreement.

Section 122.541, subdivisions 4 and 5 sets out a procedure to be followed if an Interdistrict Cooperation agreement is formed and teachers' positions are discontinued, and reads in pertinent part:

Subd. 4. The school board and exclusive bargaining representative of the teachers in each district discontinuing grades pursuant to an agreement permitted by subdivision 1 may negotiate a plan for the assignment or employment in a cooperating district or the placement on unrequested leave of absence of teachers whose positions are discontinued as a result of the agreement. * * *

Subd. 5. If compatible plans are not negotiated pursuant to subdivision 4[,] * * * [i]nsofar as possible, teachers who have acquired continuing contract rights and whose positions are discontinued as a result of the agreement shall be employed by a cooperating district or assigned to teach in a cooperating district as exchange teachers * * *. If necessary, teachers whose positions are discontinued as a result of the agreement and who have acquired continuing contract rights shall be placed on unrequested leave of absence in fields in which they are licensed in the inverse order in which they were employed by a cooperating district, according to a combined seniority list of teachers in the cooperating districts.

Minn.Stat. § 122.541, subds. 4, 5 (1984).

If the phrase "portions of grades" is construed to include subjects, Renstrom would have been eligible to teach the classes offered in the Evansville school district to Ashby students.

Our primary objective when interpreting a statute must be to ascertain and effectuate the intention of the legislature. Minn. Stat. § 645.16 (1984); *Stawikowski v. Collins Electric Construction Co.,* 289 N.W.2d 390, 395 (Minn.1979). We cannot supply what the legislature "purposely omits or inadvertently overlooks." *Wallace v. Commissioner of Taxation,* 289 Minn. 220, 230, 184 N.W.2d 588, 594 (1971); *See also State v. Corbin,* 343 N.W.2d 874, 876 (Minn.Ct.App.1984).

Arguably, "portions of grades" could be construed to include instruction in a single class. The legislative history provided in the record, however, suggests that section 122.541 was addressed to circumstances other than those present in this case. Under the law before section 122.541 was enacted, each of the 438 existing school districts was required to offer grades kindergarten through twelve to qualify for state aid. The legislative history indicates that this requirement created a great deal of hardship in some of the small rural school districts. Often there were so few students enrolled in a particular grade that providing instruction for them was an eco-

nomic drain on the district. In many instances these same small districts were opposed to consolidating with other districts and losing their identity.

Section 122.541 was a compromise which allowed districts to enjoy some of the benefits of consolidation without totally dissolving their school districts. Pursuant to section 122.541, school districts could enter into agreements to send the students from some grades to another district without losing their state aid.

During the Senate hearings that considered section 122.541, Senator Strand noted:

> I might also mention, Mr. Chairman, that the Cyrus District and the Morris District are pursuing on an experimental basis, some type of cooperation starting next fall in which the Cyrus students will be over at the Morris District for two hours a day, five days a week. Basically, what's going to happen there is that * * * there's about 35 pupils in grades 11 and 12, and 24 of those go to Morris for two hours every day for vocational instruction, and it's the purpose of the Cyrus board, and they've already started negotiations, and that's to allow the academic students to just ride along on the bus, be dropped off at the Morris High School in which they can take advanced biology, computers, things of that nature which are not available in the Cyrus district at the present time. So, * * * they can do that under statutes right now because they are not, it's my understanding, because they are not specifically deleting any grade. If they would send them over for the whole day, then perhaps we would run afoul with the statutes as they are.

*Hearings on S.F. 230 Before the Subcomm. on Educational Organization of the Senate Education Comm.* (Mar. 16, 1979).

At the same hearing Senator Setzepfandt also noted that:

> [T]he little town of Raymond is doing * * * what Cyrus and Morris are planning on doing * * * next year and it's working quite well. Raymond is not consolidated or officially cooperating with Willmar, but they are sending kids over there for a few hours a day for some of the higher academic courses. These things can be done on the framework of the present law, but statewide pairing might allow them to work it in a little bit more effectively.

*Id.*

The language of the statute specifically refers to "grades." It is evident from the legislative history that the legislators were aware of instances where · districts had shared "classes" and yet wrote the statute to include only "grades." Under these circumstances, we are constrained to read section 122.541 to apply only to instances where grades or portions of grades are discontinued ˙ and those students affected receive all their instruction in another school ·district. Section 122.541 does not apply where students are transported to another school district to take one or two classes that have been discontinued in their district but continue to receive the remainder of their education in the school district where they reside.

## II. JOINT POWERS AGREEMENT

■ Renstrom also argues that the class sharing between Ashby and Evansville school districts was improper because the two districts had not entered into a valid Joint Powers Agreement.[1] The Ashby school board had written and signed such an agreement in August 1983 and forwarded the agreement to the Evansville school board for their signature. The present lawsuit was brought in the interim, however, and Evansville never signed the written agreement.

Minn.Stat. § 471.59, subd. 1 (1984) provides in part:

---

1. Even if the parties had not entered into a Joint Powers Agreement, the class sharing agreement here would have been appropriate under the general powers accorded school districts in Minn.Stat. § 123.35 (1984).

Two or more governmental units, by agreement entered into through action of their governing bodies, may jointly or cooperatively exercise any power common to the contracting parties or any similar powers * * *.

The statute does not specifically require that the agreement between the two governmental units be in writing.

In the present case the facts show that both school districts operated in accordance with the terms of the Joint Powers Agreement proposed by the Ashby school board. Evansville school district provided instruction to the Ashby students and billed Ashby school district on a pro-rata basis. Ashby provided transportation to and from the program site in Evansville. The intent of the parties to perform under a Joint Powers Agreement is clear from their actions.

### III. REINSTATEMENT UNDER MINN. STAT. § 125.12

█ Finally Renstrom contends that when Ashby school district decided to offer business courses in another district that it had previously canceled in the Ashby district, a position became available under the terms of Minn.Stat. § 125.12, subd. 6b(e) (1984) and she should have been reinstated to teach those courses.

Section 125.12, subd. 6b(e) (1984) provides in part:

> Teachers placed on unrequested leave of absence shall be reinstated to the positions from which they have been given leaves of absence or, if not available, to other *available positions in the school district* in fields in which they are licensed. Reinstatement shall be in the inverse order of placement on leave of absence.

(Emphasis added). Because no position became available within the Ashby school district, we cannot bring the facts of this case within the purview of section 125.12, subd. 6b(e).

We appreciate the unfortunate effect the Ashby school board's actions has had on Renstrom. She has been placed on an unrequested leave of absence. If the Ashby school board had decided to once again offer the accounting class in the Ashby school district, Renstrom would have been eligible for reinstatement and the Ashby school board could not have hired a less senior teacher to teach those courses. Pursuant to the agreement between Ashby and Evansville, a less senior teacher is, in fact, teaching those courses which Renstrom would otherwise teach. However, under the current language of the statutes we cannot expand their application to include the Ashby school district's actions in this case.

The Ashby school district attempts to argue that Renstrom's claims are barred by the doctrine of res judicata. However, the district filed no notice of review as required by Minn.R.Civ.App.P. 106. Also the trial court never rendered a decision on this issue. Under these circumstances we will not address the Ashby school district's argument.

### DECISION

Minn.Stat. § 122.541 does not apply where a school district cancels only certain classes and transports the students to another district for instruction in those subjects. Therefore, Renstrom is not entitled to the seniority rights of section 122.541.

The Evansville school district provided instruction to Ashby school district students under a valid Joint Powers Agreement between the two districts.

Renstrom is not entitled to reinstatement under Minn.Stat. § 125.12, subd. 6b(e).

Affirmed.