**Robert MOHN, Relator,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 697, Eveleth, Minnesota, Respondent.**

**No. C5-87-1295.**

Court of Appeals of Minnesota.

Dec. 15, 1987.

Review Denied Feb. 17, 1988.

Roger J. Aronson, Rischmiller, Wasche, Knippel, Rischmiller and Aronson, Minneapolis, for relator.

Scott C. Neff, Neff and Lager, Virginia, for respondent.

Considered and decided by FORSBERG, P.J., and WOZNIAK and STONE*, JJ., with oral argument waived.

## OPINION

BRUCE C. STONE, Judge.

This appeal is from a decision of the respondent Independent School District No. 697, Eveleth, Minnesota adopting the findings, conclusions and recommendation of a hearing examiner and placing relator Robert Mohn on unrequested leave of absence (ULA). We affirm.

## FACTS

In 1986, the boards of the Eveleth school district and Independent School District No. 699, Gilbert, Minnesota entered into an agreement pursuant to the Interdistrict Cooperation Act (ICA), which is set out in Minn.Stat. § 122.541 (1986).

In accordance with this agreement, Eveleth discontinued grades 7, 8, and 9; Gilbert discontinued grades 10, 11, and 12. Eveleth now operates the senior high school program and Gilbert operates the junior

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

high school program. The agreement provides that each district "shall continue to operate their grades Kindergarten through 6 (K–6) *separately.*" (Emphasis added.) Also operated by Eveleth and not included in the agreement is the Eveleth Area Vocational–Technical School (EAVTI).

The agreement further established four administrative positions: Superintendent, Administrator of Business Affairs, Senior High Principal, and Junior High Principal. These administrative positions were assigned under the agreement as follows:

| NAME | POSITION BEFORE | POSITION AFTER | SENIORITY |
|------|------|------|------|
| Michael Lang | Gilbert superintendent | Superintendent of both | |
| Myron Fahey | Gilbert secondary principal | Business administrator | 7/18/58 |
| Val Melgeorge | Eveleth senior high principal | Senior high principal | 8/1/69 |
| Robert Mohn | Eveleth junior high principal | Junior high principal | 8/2/74 |

Because the junior high school was still operated by Gilbert, Mohn (whose contract was held by Eveleth and who continued to be considered an Eveleth employee under the terms of the agreement) was technically an "exchange teacher" under the agreement.

In April 1987, the business administrator position occupied by Fahey was discontinued by action of both school boards. The agreement provided that "[i]f necessary, [grades] 7–12 teachers whose positions are discontinued as a result of this agreement and who have acquired continuing contract rights, shall be placed on unrequested leave of absence in fields in which they are licensed in inverse order in which they were employed by one of the districts, according to a combined seniority list of teachers in both districts." Based on a combined seniority list which included only *secondary* teachers and administrators from Eveleth and Gilbert, Fahey (who is licensed in the areas of Latin and Greek (7–12), elementary principal, secondary principal, and superintendent) was given the option of bumping either Melgeorge or Mohn. Fahey chose the junior high principalship occupied by Mohn.

After being proposed for ULA as to his administrative position and for reassignment into a full-time teaching position in grades 7–12, Mohn requested a hearing to challenge his placement on ULA. Mohn (who is licensed in the areas of social studies, history, English, secondary principal, and superintendent) argued at the hearing that because Fahey is also licensed as an elementary principal, he should have been required to bump the elementary principal in Gilbert, Barbara Goblirsch, who was hired on July 1, 1986 and is most junior. It should be noted that the elementary principal in Eveleth is more senior than Mohn, Melgeorge, and Goblirsch.

Acceptance of Mohn's contention would result in the following assignments:

| NAME | PRESENT POSITION | PROPOSED POSITION | SENIORITY |
|------|------|------|------|
| Fahey | Business administrator | Gilbert elementary principal | 7/18/58 |
| Mohn | Junior high principal | Junior high principal | 8/2/74 |
| Goblirsch | Gilbert elementary principal | ULA | 7/1/86 |

Mohn's position was rejected by the Hearing Examiner, who reached the following conclusions:

3. Robert Mohn was properly identified as the administrator for ULA as he is the least senior administrator employed under the ICA.

4. The joint board correctly determined the scope of the combined seniority list pursuant to Minn.Stat. § 122.541 by excluding elementary and EAVTI staff.

5. Mohn does not have the right to force the districts to realign administrative positions. Mohn has no employment rights or realignment rights which would affect the Gilbert elementary principal position.

6. It would be educationally impractical and unsound for the Gilbert school district to realign Fahey into the elementary principal position.

This appeal followed issuance of a writ of certiorari.

## ISSUE

Does the ICA allow the use of a combined seniority list in this case which includes secondary and elementary teachers from both districts?

## ANALYSIS

The standard of review on appeal from a school board decision is well established:

> The nature of judicial review in a certiorari proceeding under Minn. Stat. § 125.12 is limited. The school board's decision * * * will not be heard de novo and will not be set aside by a reviewing court unless the decision is fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction or based on an erroneous theory of law.

*Peck v. Independent School District No. 16,* 348 N.W.2d 100, 101 (Minn.Ct.App. 1984).

The dispute in this case quickly narrows down to an interpretation of the extent of the combined seniority list mandated by the ICA. Enacted in 1979, the ICA provides in pertinent part:

> Subd. 5. * * * Insofar as possible, teachers who have acquired continuing contract rights and whose positions are discontinued as a result of the agreement shall be employed by a cooperating district or assigned to teach in a cooperating district as exchange teachers pursuant to section 125.13. If necessary, teachers whose positions are discontinued as a result of the agreement and who have acquired continuing contract rights shall be placed on unrequested leave of absence in fields in which they are licensed in the inverse order in which they were employed by a cooperating district, according to a combined seniority list of teachers in the cooperating districts.

Minn.Stat. § 122.541 (1986) (enacted 1979 Minn. Laws ch. 211, § 4).

This court has characterized the ICA as follows:

Section 122.541 was a compromise which allowed districts to enjoy some of the benefits of consolidation without totally dissolving their school districts. Pursuant to section 122.541, school districts could enter into agreements to send the students from some grades to another district without losing their state aid.

*Renstrom v. Independent School District No. 261,* 390 N.W.2d 25, 28 (Minn.Ct.App. 1986). Since the ICA is a remedial device intended to provide flexibility and options to small, outstate districts, we believe that it should be interpreted as allowing those districts the authority to utilize a combined seniority list coextensive with their individual agreements.

Mohn contends that agreements entered pursuant to the ICA should be required to realign in accord with cases interpreting similar statutes governing teachers. *See* Minn.Stat. § 125.12, subd. 6b(b) (1986) ("Teachers who have acquired continuing contract rights shall be placed on unrequested leave of absence in fields in which they are licensed in the inverse order in which they were employed in the school district"); Minn.Stat. § 125.17, subd. 11(a) (1986) ("Any teacher whose services are terminated on account of discontinuance of position or lack of pupils shall receive first consideration for other positions in the district for which that teacher is qualified. In the event it becomes necessary to discontinue one or more positions, in making such discontinuance, teachers shall be discontinued in any department in the inverse order in which they were employed.")

In *McManus v. Independent School District No. 625,* 321 N.W.2d 891 (Minn.1982), *rehearing denied,* August 31, 1982, for example, the supreme court rejected the school district's argument that seniority should be calculated by length of service *within a department* rather than in the entire school district. Drawing an analogy between *McManus* and the district's current position (that seniority should be determined solely within the secondary level exclusive of elementary positions), Mohn argues that that position should similarly be rejected. We find *McManus* to be dis-

tinguishable because it does not involve an ICA agreement which governs only secondary grades and which expressly excludes each district's elementary grades from its operation.

In *Strand v. Special School District No. 1*, 392 N.W.2d 881 (Minn.1986), the court held that "where reassignment or realignment and reassignment is practical and reasonable, a school district is required to reassign teaching duties in a manner designed to continue the employment of senior teachers * * *." *Id.* at 886.

▇ Mohn contends that *Strand* requires that the district retain him in the junior high school principalship in Eveleth, move Fahey into the elementary position in Gilbert, and place Goblirsch on ULA. We disagree. Acceptance of this argument would essentially allow an Eveleth secondary teacher to assert seniority rights against a Gilbert elementary teacher via the ICA. We do not believe that Mohn's employment rights should be extended beyond his school district into another district whose elementary program and staff are not part of the ICA agreement. Of course his right to a fulltime teaching position in grades 7–12 is not affected by this decision.

Mohn finally challenges the hearing examiner's conclusion that based on the relative abilities of Goblirsch and Fahey, "[i]t would be educationally impractical and unsound * * * to realign Fahey into the elementary principal position." Because we believe that the district's interpretation of the combined seniority list was proper and dispositive of this case, we need not discuss this issue.

## DECISION

Affirmed.