**Donald P. SHEREK, Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 699, Gilbert, Minnesota, Thomas Beste, Rule 19 defendant, Laurance Kleven, Rule 19 defendant, Respondents,**

**David Kriska, Rule 19 Defendant.**

**No. C8–88–1284.**

Court of Appeals of Minnesota.

Feb. 21, 1989.

Review Granted April 26, 1989.

Richard L. Kaspari, Peterson, Engberg & Peterson, Minneapolis, for Sherek.

Scott C. Neff, Neff & Lager, Virginia, for Independent School Dist. No. 699.

Donald L. Bye, Halvorson, Watters, Bye, Downs & Maki, Duluth, for Beste.

Brad P. Engdahl, Robins, Kaplan, Miller & Ciresi, Minneapolis, for Kleven.

Heard, considered and decided by RANDALL, P.J., and FOLEY and SCHUMACHER, JJ.

## OPINION

RANDALL, Judge.

Independent School District No. 699 acted in accordance with Minnesota law in denying appellant recall rights based on the consolidation of the school districts through an interdistrict cooperation agreement.

## FACTS

The facts are essentially undisputed. Appellant Donald Sherek began teaching industrial arts in the Gilbert school district in the 1968/69 school year. At the end of the 1981/82 school year, Sherek was placed on unrequested leave of absence (ULA).

Four years later, the Gilbert and Eveleth school districts began negotiations for merger. Because of financial difficulties, the school districts entered into an interdistrict cooperation agreement (IDCA). As a result of the IDCA, a Gilbert school building became the junior high for the district, and an Eveleth school building became the senior high. Before the IDCA, the Gilbert school district offered five courses in industrial arts and the Eveleth school district offered 18 courses in industrial arts. After the IDCA, both schools offered nine courses in industrial arts each, with a net reduction or loss of five sections of industrial arts. The IDCA was effective on July 1, 1986.

After implementing the IDCA, the joint seniority lists were circulated, one of which included Sherek, and two of which omitted him. The relative seniority ranking of the teachers involved in this litigation is as follows:

| | Overall Rank | Employed |
|---|---|---|
| Donald Sherek | 55 | August 1968 |
| Laurance Kleven | 81 | August 1970 |
| Thomas Beste | 94 | August 1975 |
| David Kriska | 104 | August 1976 |

It is not in dispute that as a result of the IDCA, no "new" positions were created, nor did any vacancies occur in the industrial arts area.

On March 17, 1988, the trial court issued its findings of fact and conclusions of law, determining that Sherek was not entitled to reinstatement. We affirm.

## ISSUE

Did the Gilbert and Eveleth school districts act in accordance with Minn.Stat. § 122.541, subd. 5 (1986) and Minn.Stat. § 125.12, subd. 6b (1986) in determining that appellant Sherek was not entitled to recall from unrequested leave of absence?

## ANALYSIS

The trial court's findings of fact may not be disturbed unless they are clearly erroneous. Minn.R.Civ.P. 52.01. However, an appellate court need not give deference to the trial court's decisions on legal issues. See Frost–Benco Electric Association v. Minnesota Public Utilities Commission, 358 N.W.2d 639, 642 (Minn.1984).

This litigation involves a conflict between two statutes. Minn.Stat. § 125.12, subd. 6b (1986) governs a school district's duties and obligations to a teacher placed on ULA. Minn.Stat. § 125.12, subd. 6b(e), (f) (1986) is the operative section and provides in part:

> (e) Teachers placed on unrequested leave of absence shall be reinstated to the positions from which they had been given leaves of absence or, if not available, to other available positions in this school district in fields in which they are licensed. Reinstatement shall be in the inverse order of placement on leave of absence. * * *

> (f) No appointment of a new teacher shall be made while there is available, on unrequested leave, a teacher who is properly licensed to fill such vacancy, unless

the teacher fails to advise the school board [of his or her intent to return]. This section instructs that teachers should be laid off in inverse order of seniority, and reinstated according to seniority. *See Berland v. Special School District No. 1, Minneapolis,* 314 N.W.2d 809, 817 (Minn.1981).

The previous provision, arguably, conflicts with Minn.Stat. § 122.541, subds. 4 and 5. Subdivision 4 allows the school board and teachers' bargaining representative to negotiate a plan for the assignment or employment of teachers placed on ULA. Absent such negotiation, subdivision 5 controls teachers' reinstatement rights in districts merging through an IDCA. This subdivision provides, in pertinent part:

> If compatible plans are not negotiated pursuant to subdivision 4 * * * the cooperating districts shall be governed by the provisions of this subdivision. Insofar as possible, teachers who have acquired continuing contract rights and whose positions are discontinued as a result *of the agreement* shall be employed by a cooperating district or assigned to teach in a cooperating district as exchange teachers pursuant to section 125.13. If necessary, teachers whose positions are discontinued *as a result of the agreement* and who have acquired continuing contract rights shall be placed on unrequested leave of absence in fields in which they are licensed in the inverse order in which they were employed by a cooperating district, according to a combined seniority list of teachers in the cooperating districts.

(Emphasis added). Naturally, appellant argues that section 125.12 controls and dictates that Sherek should be recalled to employment by virtue of his seniority. Respondents argue that section 122.541 controls and that since Sherek was placed on ULA prior to the agreement, and was not placed on ULA by virtue *of the agreement,* he has no rights to reinstatement. We hold the trial court properly agreed with respondents.

■ Minn.Stat. § 645.26, subd. 1 (1986) provides that where two provisions of law are in conflict, the two shall be construed, if possible, to give effect to both. However, if the conflict is irreconcilable, the more specific provision shall prevail and shall be construed as an exception to the general provision. *See Schultz v. Ruiz,* 281 Minn. 281, 161 N.W.2d 537 (1968); *State Ex rel. Interstate Air-Parts, Inc. v. Minneapolis–St. Paul Metropolitan Airports Commission,* 223 Minn. 175, 25 N.W. 2d 718 (1947). Further, Minn.Stat. § 645.17(1) (1986) creates a presumption that the legislature does not intend an absurd or unreasonable result when it enacts a statute. *See Salmen v. City of St. Paul,* 281 N.W.2d 355 (Minn.1979). This section also deems that the legislature intends to favor the public interest over any private interest.

■ Minn.Stat. § 125.12, subd. 6b, governs recall rights of Minnesota teachers placed on ULA in general. Minn.Stat. § 122.541, subd. 5, governs recall rights of teachers in the specific circumstance of a multiple district IDCA. Section 122.541 specifically refers to the interdistrict cooperation agreement, and utilizes language relevant only to an IDCA. Section 122.541 is the more specific provision of the two. We agree with the trial court that section 122.541 should be construed as an exception to the more general provisions of section 125.12. We find the trial court properly applied section 122.541 to determine appellant Sherek's reinstatement rights.

We note that the dissent relies on *Renstrom v. Independent School District No. 261,* 390 N.W.2d 25 (Minn. Ct.App.1986). *Renstrom* did not directly address the issue of statutory construction presented by this case. In *Renstrom,* this court held that section 122.541 did not apply because the business education program Renstrom taught was not a portion of a grade within the meaning of section 122.541, subd. 1. *Id.* at 27–28. The court then determined that since section 122.541 did not apply to the agreement between the schools, Renstrom's recall rights were not governed by section 122.541, subdivisions 4 and 5. Thus, the court analyzed Renstrom's claim under section 125.12, subd. 6b(e). *Id.* at 29. Since we hold that section 122.541 applies

when teachers assert recall rights in IDCA situations, we are not bound by the language from *Renstrom* quoted in the dissent.

We agree with appellant to the extent that section 125.12, subdivision 6b, governed appellant's situation during the four years he spent on ULA prior to the two districts implementing IDCA. However, appellant's recall rights, if any, into an IDCA district are governed by section 122.-541. To give literal interpretation to section 125.12 would be to essentially repeal section 122.541 as it applies in this instance. Appellant, who is not a party to the IDCA, cannot "come out of the woodwork" and assert seniority over teachers actively in the employ of the Eveleth school district solely because they are using a building in appellant's school district, when the basis for the use of the Gilbert building is the IDCA.

This is not a situation where one of two school districts has been eliminated. Gilbert teachers remain employees of the Gilbert district, and the same is true for Eveleth teachers. No new industrial arts positions were created because of the IDCA; no new industrial arts teachers were hired because of the IDCA. IDCA's are cooperative arrangements between school districts. They are not total consolidations where the identity of two or more separate districts disappears and one brand new identity emerges.

Sherek has suffered no prejudice as a result of the IDCA. He was on ULA prior to the consolidation, and there he remains. If a new position in industrial arts is now added, or an opening occurs, Sherek will have recall rights under section 125.12. Respondents concede that if one of them were *now* placed on ULA, Sherek's recall rights would be senior to theirs. But until that event occurs, Sherek has no present right to replace an Eveleth teacher simply because the Eveleth teacher is teaching a class in a Gilbert school building because of an IDCA that Sherek was not a party to.

Respondent Kleven argues that but for the IDCA, Kleven would have a teaching position in Eveleth and to grant Sherek preference to Kleven would be to grant Sherek a windfall. We agree. Such a windfall is precisely the result subdivision 5 of section 122.541 sought to avoid.

For four years prior to the IDCA, Sherek was on ULA. During those four years, Beste, Kleven and Kriska remained in the active employ of their respective school districts. We agree with the trial court that the IDCA did not give teachers previously placed on ULA and not a party to the present IDCA agreement the right to now move in and bump a presently employed teacher.

## DECISION

AFFIRMED.

FOLEY, Judge (dissenting).

I respectfully dissent. The majority takes the position that the provisions of Minn.Stat. § 122.541 create an exception to the provisions of Minn.Stat. § 125.12, and that Sherek's right to be reinstated is controlled by section 122.541. The result of that interpretation is that less senior teachers working for the Eveleth school district have rights to positions in the Gilbert schools which supersede the reinstatement rights of a senior teacher employed by the Gilbert school district. The Interdistrict Cooperation Act creates no such exception to the Teacher Tenure Act.

Under the Interdistrict Cooperation Act, teachers employed by the Eveleth school district do have rights to positions in the Gilbert schools. However, an Eveleth teacher's right to a teaching position in Gilbert supersedes Sherek's right to be reinstated to that position only if the Eveleth teacher is more senior than Sherek. That is not the case here. Sherek is a continuing contract teacher placed on unrequested leave of absence by the Gilbert school district and is more senior that Kleven, Beste, and Kriska and the court so found. To assign less senior Eveleth teachers to positions within Sherek's licensure in the Gilbert school district violates Sherek's rights as a continuing contract teacher.

Based on the decision by this court in *Renstrom v. Independent School District No. 261*, 390 N.W.2d 25 (Minn.Ct.App.1986), I conclude that Sherek, a Gilbert teacher, should be entitled to reinstatement to a position in the Gilbert schools. In *Renstrom*, a full-time teacher in the Ashby school district was placed on unrequested leave of absence when the Ashby district discontinued its business education program. The Ashby school board had signed a Joint Powers Agreement under which students from Ashby were sent to the Evansville school district for two business courses. Those courses were taught by an Evansville teacher less senior to Renstrom, who argued that she should have been reinstated to teach those classes. This court held that she was not entitled to reinstatement under Minn.Stat. § 125.12, subd. 6b(e), because no position became available within the Ashby school district. Judge Huspeni, writing the opinion and joined by Judges Lansing and Nierengarten, held:

> If the Ashby school board had decided to once again offer the accounting class in the Ashby school district, Renstrom would have been eligible for reinstatement and the Ashby school board could not have hired a less senior teacher to teach those courses.

*Id.* at 29. Here, Sherek is a Gilbert teacher with seniority, and the position for which he is licensed, secondary industrial arts, is being taught in his own district. No language in section 122.541 gives less senior teachers from another cooperating school district the right to occupy a teaching position in Gilbert in preference to a more senior Gilbert teacher on unrequested leave.

It may be that these statutes should be reviewed by the Minnesota Legislature to resolve any conflicts that arise in these situations, but to hold as the majority does here, is to totally ignore *Renstrom*, a well-reasoned decision of this court.