Howard E. HARMS, Appellant,

v.

**INDEPENDENT SCHOOL DISTRICT NO. 300, LaCRESCENT, Minnesota, Respondent.**

No. CX–88–2226.

Court of Appeals of Minnesota.

June 6, 1989.

Michael J. Vanselow, Oppenheimer Wolff & Donnelly, St. Paul, for appellant.

Philip A. Gartner, Steven M. Hardy, Gartner, Shulman & Erwin, Ltd., Lake City, for respondent.

William F. Garber, Peterson, Engberg & Peterson, Minneapolis, for amicus curiae MN Federation of Teachers.

Joseph E. Flynn, Knutson, Flynn, Hetland & Deans, St. Paul, for amicus curiae MN School Boards Ass'n.

Heard, considered and decided by SHORT, P.J., and RANDALL and KALITOWSKI, JJ.

## OPINION

KALITOWSKI, Judge.

Howard Harms appeals the trial court's entry of summary judgment. We reverse and remand.

### FACTS

Howard Harms began teaching in the Independent School District # 300, LaCrescent, Minnesota (hereinafter "District") in August 1977. He is licensed to teach social studies, history, physical education and coaching. Harms held a full-time position

teaching social studies throughout the 1985–86 school year.

In March 1986, the District eliminated the guidance and counseling program at the LaCrescent Junior–Senior High School effective at the end of the 1985–86 school year. At that time, Richard Kleppe and Mary Netzer made up the entire guidance and counseling staff. Kleppe began teaching in the District in August of 1969 and is licensed to teach guidance and counseling, vocational counseling, social studies and business education. Netzer began teaching in the District in August of 1981 and is licensed to teach guidance and counseling and social studies.

Due to the elimination of the guidance and counseling program, the District placed both Harms and Netzer on unrequested leave of absence and reassigned Kleppe to teach the full-time social studies position vacated by Harms.

In December of 1986, the District recreated a counseling position at the Junior–Senior High School effective at the beginning of the 1987–88 school year. At that time Harms requested realignment of Kleppe to the counseling position and reinstatement to his previous social studies position. The District ignored Harms' request and offered the position of "Outcome Based Guidance Instructor" to Netzer. Netzer initially accepted, but subsequently turned down the District's employment offer. The District then advertised for applicants to fill the position and Harms initiated this declaratory judgment action.

Ultimately, the District hired one of its staff members, Jon Larson, to fill the open counseling position. Larson began teaching in the District in September of 1967. During the 1986–87 school year, Larson taught art full time at the Junior–Senior High School.

The District reinstated James Little from unrequested leave to fill the open art position. While both Little and Harms were placed on unrequested leave at the same time, Little began teaching in the District in August of 1980, three years after Harms.

In his action before the trial court, Harms requested reinstatement to his full-time social studies position. To accommodate this request, he asked the District to reassign Kleppe to counseling, Larson to art, and place Little on unrequested leave. The trial court denied Harms' request. Harms now appeals the trial court's ruling.

## ISSUE

Does Minn.Stat. § 125.12, subd. 6b(e) (1986) require school districts to take reasonable steps to realign personnel and positions when a vacancy occurs to accommodate seniority rights of teachers on unrequested leave of absence?

## ANALYSIS

This is a case of first impression involving the interpretation of Minn.Stat. § 125.12, subd. 6b(e). The trial court held the statute and case law do not require reasonable realignment to protect seniority when reinstating teachers from unrequested leave of absence. We disagree.

1. Seniority protection.

▮ In granting respondent's motion for summary judgment, the trial court held seniority is *not* a primary concern in reinstatement cases. We disagree and hold that reasonable protection of seniority is a primary concern in reinstatement cases.

The supreme court has placed a premium on the protection of teacher seniority rights under the Teacher Tenure Act, Minn.Stat. § 125.17 (1986). *See Strand v. Special School District No. 1*, 392 N.W.2d 881 (Minn.1986). This reasoning has also been extended to teachers governed by Minn. Stat. § 125.12 (1986). *See Westgard v. Independent School District No. 745*, 400 N.W.2d 341 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. April 17, 1987).

This court has recently stated:

Seniority is not a matter to be treated lightly. The very stability of our schools depends on retaining those teachers who because of long years of experience and devotion have earned the obedience of the pupils, the admiration of the parents,

and the respect of the community. Considering the comparatively low salaries paid the teaching profession the very least that should be guaranteed them is fireproof tenure for their invaluable services in preparing the future citizens of this great Republic.

*Strand v. Special School District No. 1*, 361 N.W.2d 69, 73 (Minn.Ct.App.1984), *aff'd as mod. on other grounds*, 392 N.W. 2d 881 (Minn.1986) (citing *Welsko v. School Board*, 383 Pa. 390, 392, 119 A.2d 43, 44 (1956)). In short, the purpose of Minn.Stat. § 125.12 is to protect teacher employment and seniority rights. *Walter v. Independent School District No. 457*, 323 N.W.2d 37, 43 (Minn.1982), *see also McManus v. Independent School District No. 625*, 321 N.W.2d 891, 893 (Minn.1982) ("[T]he clear intent of Minn.Stat. § 125.17 [is] to give preference to teachers who have been employed in the district longer periods of time."). Accordingly, we recognize the protection of teacher seniority rights is a primary concern of Minn.Stat. § 125.12 (1988).

■ Reinstatement of teachers on unrequested leave of absence is governed by Minn.Stat. § 125.12, subd. 6b(e) (1988):

Teachers placed on unrequested leave of absence shall be reinstated to the positions from which they have been given leaves of absence or, if not available, to other available positions in the school district in fields in which they are licensed. *Reinstatement shall be in the inverse order of placement on leave of absence.* No teacher shall be reinstated to a position in a field in which the teacher holds only a provisional license, other than a vocational education license, while another teacher who holds a nonprovisional license in the same field remains on unrequested leave. The order of reinstatement of teachers who have equal seniority and who are placed on unrequested leave in the same school year shall be negotiable;

*Id.* (emphasis added).

While not directly addressing the issue of reasonable realignment, the supreme court

has interpreted the above section and held reinstatement of teachers shall be in order of seniority. *Berland v. Special School District No. 1*, 314 N.W.2d 809 (Minn.1981). In analyzing Minn.Stat. § 125.12, subd. 6b(d) (1980),[1] the court stated, "§ 125.12 * * * demonstrates that the legislature can provide explicitly for terminated teachers to be recalled in order of seniority." *Id.* at 817. The office of the attorney general has reached a similar conclusion. *See In re Independent School District No. 623*, Op. Att'y. Gen. (Aug. 12, 1985) ("reinstatement of teachers previously placed on unrequested leave of absence is to be based upon their respective seniority with the District, regardless of the date on which they were placed on unrequested leave of absence"). We are satisfied that Minn.Stat. § 125.12, subd. 6b(e) provides for reinstatement of teachers from unrequested leave of absence by seniority. As such, the statute is designed to protect teacher seniority rights.

■ In *Strand*, the supreme court held that the Teacher Tenure Act mandates practical and reasonable realignment of course assignments to protect seniority rights when placing teachers on unrequested leave of absence. *Strand*, 392 N.W.2d at 885. This court extended the reasoning to protect seniority rights in school districts governed by Minn.Stat. § 125.12. *See Westgard*, 400 N.W.2d at 341.

The policy considerations of *Strand* and *Westgard* apply equally in the present case. In *Strand*, the supreme court deemed reasonable realignment necessary to adequately protect seniority rights. *Strand*, 392 N.W.2d at 886. Absent an obligation to reasonably realign prior to reinstatement, school districts could defeat the goal of protecting seniority by manipulating the layoff and recall process to eliminate senior teachers. To allow such a result is contrary to the overall policy of Minn.Stat. § 125.12 and would have the effect of circumventing the holdings in *Strand* and *Westgard*. We therefore hold that because reasonable protection of seniority is a pri-

---

1. Minn.Stat. § 125.12, subd. 6b(d) (1980) was later renumbered as Minn.Stat. § 125.12, subd. 6b(e) (1986). The renumbered statute contains identical language.

mary concern in reinstatement cases, reasonable realignment of the teaching staff is required.

### 2. Hearing and notice procedures.

■ The trial court ruled that because reinstatement decisions do not involve the hearing and notice procedures leading to placement on unrequested leave, appellant's construction of subdivision 6b(e) requires making a finding in the absence of a reliable record. Moreover, the trial court found the lack of hearing and notice procedures for reinstating teachers from unrequested leave of absence indicates that the legislature did not intend to compel realignment. We do not find this reasoning persuasive.

Initially, we note that by seeking a declaratory judgment appellant was able to develop a sufficient record to enable the trial court to review the reasonableness of the requested realignment. Moreover, the lack of hearing and notice procedures does not have a bearing on the legislature's intent regarding realignment. The hearing and notice procedures utilized when realigning for placement on unrequested leave of absence existed *prior to* the court's recognition of a duty to realign. Therefore, the legislature's intent with respect to realignment cannot be inferred from a lack of hearing and notice procedures.

### 3. Administrative burdens.

■ The trial court found appellant's construction of subdivision 6b(e) will create undue administrative burdens on school districts. We disagree.

We want to emphasize that the right to realignment prior to reinstatement from unrequested leave of absence is not absolute. We specifically recognize the school district's need for flexibility when carrying on the daily administration of a school system. *See Laird v. Independent School District No. 317*, 346 N.W.2d 153, 155

(Minn.1984). Clearly situations will arise when realignment is impractical and unreasonable. Thus, in any reinstatement case the school district could determine that a particular realignment is not reasonable. We note in particular that due to potential disruption of the classroom, midyear vacancies and reinstatements pose unique problems which may make some realignments unreasonable. Thus, the reasonableness of each reinstatement must be judged on a case by case basis.

### 4. Appellant's realignment request.

In the matter before us the trial court held that Minn.Stat. § 125.12, subd. 6b(e) does not require realignment. The court did not address the issue of the reasonableness of appellant's realignment request. Therefore, in light of our holding that reasonable realignment is required under the statute, we remand this matter to the trial court for a determination as to whether under the facts of this case realignment is reasonable.

### DECISION

Summary judgment dismissing Harms' declaratory judgment action is reversed and remanded. Minn.Stat. § 125.12, subd. 6b(e) requires reasonable realignment when reinstating teachers from unrequested leave of absence.

Reversed and remanded.

RANDALL, Judge, dissenting.

I respectfully dissent. I would have affirmed the trial court.

*Strand* and *Westgard*[1] mandate realignment,[2] but only when placing a teacher *on* unrequested leave of absence (ULA). As the trial court correctly observed, neither the Minnesota Supreme Court nor the legislature has specifically extended the principle of realignment to the reinstatement procedures used when staff are called *back* from ULA.

1. *Strand v. Special School District No. 1*, 392 N.W.2d 881 (Minn.1986); *Westgard v. Independent School District No. 745*, 400 N.W.2d 341 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Apr. 17, 1987).

2. In its simplest terms, realignment means taking a senior teacher who has more than one licensure and shifting that person around so that a less senior teacher can move into that now vacated licensure in order to avoid being placed on unrequested leave of absence. *See Strand*, 392 N.W.2d at 885–86.

There are substantial differences between placing a teacher on ULA, and calling one back. The decision to place staff on ULA is made and the people involved are given formal notice in the spring of each school year for the following year. Thus, when planning to lay off staff, there is time built into the system for juggling staff. That is not always true when previously laid-off staff are called back.[3]

Appellant argues on the specific facts of his case that there is time for respondent to "plan for realignment" as the position shifts, if any, would not take place until the following school year. While appellant's position as to time may be true on these narrow facts, the principle enunciated by the majority applies to *all* reinstatements from ULA. That is a broad extension of existing law which should not be made by this court.

Appellant's basic argument is that the requirement of realignment on recall is needed to protect seniority rights. I note that on recall, Minn.Stat. § 125.12, subd. 6b(e),[4] does provide protection for seniority rights. The statute states that reinstatement from ULA "shall be in the inverse order of placement on leave of absence." Since the most senior [5] teachers are generally laid-off last, reinstatement of the most recently laid-off teacher first gets the most

senior teacher back to work ahead of others less senior. Yet, the majority speculates on the "strawman" of possible school board deception and manipulation, and then, to solve a problem not before us, creates new law.[6]

The trial court found fundamental differences between the statutory provisions which cover placement on unrequested leave of absence and those provisions which govern reinstatement from unrequested leave. I agree. Further, the trial court found that requiring school districts to realign, in addition to reinstating in the inverse order of placement of ULA when staff is recalled, could create an undue administrative burden. The trial court noted placement on ULA happens only at the close of a school year, but the need for reinstatement can happen any time in a school year.

Like the trial court, I find no statutory provision mandating realignment on recall. I find that Minn.Stat. § 124.12, subd. 6b(e), as presently written, adequately protects seniority rights on recall. I would have affirmed.

---

3. The recall of teachers previously laid-off does not, like the decision to lay teachers off, always take place at precisely the same time in the school year. Deaths, unexpected retirements, sickness, mid-year vacancies, et cetera, render it impractical to require realignment which may occur in the midst of a school year.

4. Minn.Stat. § 125.12, subd. 6b(e) (1988) provides:

> Teachers placed on unrequested leave of absence shall be reinstated to the positions from which they have been given leaves of absence or, if not available, to other available positions in the school district in fields in which they are licensed. Reinstatement shall be in the inverse order of placement on leave of absence.

5. Amicus curiae urges on this court the case of *Sherek v. Independent School District No. 699*, 435 N.W.2d 844 (Minn.Ct.App.1989), *pet. for rev. granted* (Apr. 26, 1989) as controlling on the issue of "seniority." Amicus curiae argues that somehow *Sherek* mandates that *Strand* and

*Westgard* be extended from realignment on layoffs to realignment on reinstatement. I merely note that *Sherek* involved a completely different fact situation. *Sherek* involved the interplay between Minn.Stat. § 122.541, the interdistrict cooperation statute, and Minn.Stat. § 125.12, subd. 6b. *Sherek* did not speak to the precise issue of "realignment on recall from ULA" and does not control this case.

6. I would agree with the idea that in an individual case, if a laid-off staff member could prove intentional manipulation to get around existing law, that an appropriate remedy should be fashioned. Here, although appellant at times "hints" about manipulation in the recall process, no proof was offered, and intentional manipulation was not an issue presented to the trial court. My disagreement with the majority lies in their conclusion that new law should be created, or at the least, existing law extended broadly, to cover the possibility of staff manipulation on recall. I find enough protection in Minn.Stat. § 125.12, subd. 6b(e), for contract rights.