Donald P. **SHEREK**, Appellant,

v.

**INDEPENDENT SCHOOL DISTRICT NO. 699, GILBERT, Minnesota,**
Respondent,

and

**Thomas Beste, Laurance Kleven, and David Kriska, rule 19 defendants,**
Respondents.

No. C8–88–1284.

Supreme Court of Minnesota.

Jan. 5, 1990.

Richard L. Kaspari, Garber & Kaspari, St. Louis Park, for appellant.

Scott C. Neff, Neff & Lager, Virginia, for School Dist. # 699.

Brad P. Engdahl, Robins, Kaplan, Miller & Ciresi, Minneapolis, for rule 19 defendant Kleven.

Don L. Bye, Duluth, for rule 19 defendant Beste.

KEITH, Justice.

Appellant Donald P. Sherek appeals the decision of the court of appeals which held that under Minn.Stat. § 122.541, subd. 5 (1988) and Minn.Stat. § 125.12, subd. 6b (1988), Sherek was not entitled to reinstatement from unrequested leave of absence to a teaching position in Independent School District No. 699. The court of appeals affirmed the trial court's conclusion that the rights of defendants, Thomas Beste, Laurance Kleven, and David Kriska, were superior to Sherek's under Minn.Stat. § 122.541, subd. 5. *Sherek v. Indep. School Dist. No. 699*, 435 N.W.2d 844 (Minn.App.1989) *rev. granted* (Minn., Apr. 26, 1989). We reverse.

The essential facts are undisputed. Sherek is a teacher licensed to teach secondary industrial arts full-time and all secondary social studies courses half-time. He taught in Independent School District No. 699 ("Gilbert") from 1968 until 1982 when he was placed on unrequested leave of absence ("ULA").

In the spring of 1986, Gilbert entered into an Interdistrict Cooperation Agreement ("ICA") with Independent School District No. 697 ("Eveleth") pursuant to Minn. Stat. § 122.541. According to the agreement, Gilbert discontinued high school instruction for grades 10–12 while agreeing to provide instruction to Eveleth as well as Gilbert students in grades 7–9. As a result of the implementation of the agreement in the 1986–1987 school year, Gilbert gained four sections of secondary industrial arts classes while Eveleth lost nine.

Anticipated reduction of the number of industrial arts sections in Eveleth resulted in the placement of three Eveleth industrial arts teachers on partial or full-time ULA, the three teachers being the three rule 19 defendants in the present action, Beste, Kleven, and Kriska.

These teachers were reinstated by the Eveleth School District for the 1986–1987 school year. Beste and Kleven were reinstated to full-time positions prior to the beginning of the academic year, while Kriska received reinstatement following the *Beste v. Indep. School District No. 697,*

398 N.W.2d 58 (Minn.App.1986) decision to a full-time position with backpay to the beginning of the 1986–1987 year.

During the academic year 1986–1987, all three were assigned to Gilbert as exchange teachers. Kleven and Kriska received full-time positions. Kleven taught industrial arts and the gifted, while Kriska taught computer. Beste taught one hour of industrial arts. Gilbert did not reinstate Sherek, so he remained on ULA at the beginning of the 1986–1987 school year.

Neither computer instruction nor instruction of gifted children requires specific secondary licensure. Licensure to instruct in secondary school is sufficient. All four teachers were licensed to teach secondary industrial arts and consequently also licensed to teach computer programs and the gifted.

On a joint Eveleth–Gilbert seniority list including Sherek, Sherek ranked no. 55, Kleven no. 81, Beste no. 94 and Kriska no. 104. Sherek argues that he was senior on the combined seniority list and was entitled to first recall to the increased industrial arts, computer and gifted positions in Gilbert in accordance with the ICA and the relevant Minnesota statutes governing interdistrict cooperation agreements and teacher tenure.

■ The interpretation of statutes is a question of law, *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985), and as the essential facts are undisputed, this court is not bound by the lower court's conclusions, *see A.J. Chromy Constr. Co. v. Commercial Mech. Servs.*, 260 N.W.2d 579, 582 (Minn.1977).

Defendants contend that Sherek is not entitled to reinstatement because under the ICA, there was no "available position" in Gilbert to which he could be recalled. Reinstatement rights from ULA are governed by Minn.Stat. § 125.12, subd. 6b (1988). The relevant portions state:

Teachers placed on unrequested leave of absence shall be reinstated to the positions from which they have been given leaves of absence or, if not available, to

other *available positions* in the school district in fields in which they are licensed. Reinstatement shall be in the inverse order of placement on leave of absence.

Minn.Stat. § 125.12, subd. 6b(e) (emphasis added).

Defendants agree that section 125.12, subd. 6b governs Sherek's recall rights, but argue that under the ICA, the positions in Gilbert for industrial arts, computer, and gifted children merely "moved" from Eveleth to Gilbert as a result of the "merger." Therefore, the positions were not "available" in Gilbert. The argument is disingenuous in light of the legislative intent of the Interdistrict Cooperation Act ("IDCA") and the terms of the ICA itself.

In 1979, the legislature enacted the Interdistrict Cooperation Act (IDCA), Minn.Stat. § 122.541. Its underlying purpose was to enable smaller school districts to retain their independence and identity in the face of economic hardships. Prior to enactment of IDCA, Minnesota statutes required all independent school districts to offer instruction in all grades if they were to retain state aid. As enrollment declined in the smaller districts, providing instruction in all grades caused economic hardships that resulted in discontinuance of certain ·classes. Consolidation was an available means of avoiding those hardships, but many of the smaller districts opposed consolidation as its inevitable result would be a loss of community identity. Desiring to provide a means whereby small districts could maintain their identity and continue to receive state aid, yet not be saddled with providing instruction in all grades, the legislature enacted Minn.Stat. § 122.541. Interdistrict cooperation was to be a flexible alternative to consolidation. It permitted districts to pair with each other as they saw fit, thereby protecting the small districts from being swallowed by larger school districts.

Taking advantage of the Interdistrict Cooperation Act, Gilbert and Eveleth entered into an ICA in the spring of 1986. Article II, 2.1 of the ICA defines the basic educational parameters of each district:

INDEPENDENT SCHOOL DISTRICT # 697 [Eveleth] shall discontinue grades 7 through 9 and those students shall be instructed by INDEPENDENT SCHOOL DISTRICT # 699 in accordance with this agreement. * * * [E]ach district agrees that it shall educate the pupils of the other district in the grades the other district has discontinued in accordance with this agreement.

Concomitantly Article VI, 6.1 defines the employment status of teachers with respect to each district:

Employees and student teachers of each school district shall not be considered employees of the other district for any purpose whatsoever.

Examination of the ICA provisions in light of the purpose of section 122.541 makes clear the continued separateness of the Gilbert and Eveleth school districts. Under Article II, 2.1, Eveleth, as a separate school district, is discontinuing grades 7–9. Gilbert, also as a separate district, is taking on responsibility for instruction of Eveleth's pupils in grades 7–9. Article VI, 6.1 makes clear that teachers employed by one district are not to be considered teachers employed by the other district for any purpose whatsoever. In short, the ICA language expressly reflects the policy behind section 122.541 of keeping school districts independent. Gilbert remains a separate independent school district offering instruction in grades K–9 while Eveleth retains its identity as a school district offering instruction in grades K–6 and 10–12. Each district takes on the pupils of the other for education in the grades the other district discontinued.

█ It is this very separateness and continuing independence of the two districts which defines the concept of "available position" for purposes of section 125.12, subd. 6b(e). In order for Gilbert to fulfill its obligations under the ICA to instruct Eveleth pupils in grades 7–9, Gilbert added four sections of industrial arts. As the ICA, in conformity with the underlying purpose of the IDCA, refers to *discontinuance* of positions in one district and instruction by the other of those pupils affected, there is no

"merger" of the districts nor "moving" of the positions from Eveleth to Gilbert as defendants argued. Rather, when Gilbert increased its industrial arts positions and commenced instruction in computer and programs for gifted students, those positions became available in Gilbert. Under Minn.Stat. 125.12, subd. 6b(e), they were "available positions." Thus, we hold that when a school district must add teaching positions in certain grades to accommodate an increased pupil load caused by implementation of an Interdistrict Cooperation Agreement entered into pursuant to Minn. Stat. § 122.541, the teaching positions so created are considered "available positions" within that district for purposes of Minn. Stat. § 125.12, subd. 6b(e).

Once it is clear that a position is available, the district must turn to its seniority lists to decide whom to reinstate from ULA. Because the district has entered into an interdistrict cooperation agreement, both the relevant seniority list and its composition is determined by Minn.Stat. § 122.541, subd. 5 which provides:

> Insofar as possible, teachers who have acquired continuing contract rights and whose positions are discontinued as a result of the agreement shall be employed by a cooperating district or assigned to teach in a cooperating district as exchange teachers pursuant to section 125.13. If necessary, teachers whose positions are discontinued as a result of the agreement and who have acquired continuing contract rights shall be placed on unrequested leave of absence in fields in which they are licensed in the inverse order in which they were employed by a cooperating district, according to a combined seniority list of teachers in the cooperating districts.

Minn.Stat. § 122.541, subd. 5.[1]

Defendants argue, in effect, that subdivision 5 requires use of a combined seniority list only after all teachers displaced by the ICA have first been employed by the cooperating district or assigned as an exchange teacher. In this they are mistaken. Although section 122.541 protects employment of continuing contract teachers whose positions have been discontinued as a result of an interdistrict cooperation agreement, it places a limit on that protection. Teachers losing their positions would be employed by a cooperating district or assigned as exchange teachers only *insofar as possible.* In other words, the legislature enacted subdivision 5 to govern district actions regarding employment of continuing contract teachers whose positions have been discontinued as a result of an interdistrict cooperation agreement, but mandated employment of displaced teachers *only to the extent possible.*

■ The extent to which it is possible for a cooperating district to employ, or for a district to assign as an exchange teacher, a teacher displaced by a cooperation agreement is limited by position availability and seniority ranking. Position availability, as discussed above, is determined separately for each independent school district according to whether they must add or discontinue positions to fulfill their obligations under an ICA. Seniority is determined according to a combined seniority list.

Thus, under section 122.541, subd. 5, teachers whose positions have been discontinued by reason of an interdistrict cooperation agreement will be placed on ULA. All teachers on ULA, whether as a result of the cooperation agreement or otherwise, will be included in the combined seniority list provided by section 122.541, subd. 5. Then, on the basis of available positions as defined above, teachers on ULA will be reinstated pursuant to section 125.12, subd. 6b(e), according to seniority as listed on the combined list. Insofar as possible, depending on both seniority and available positions, teachers displaced by the cooperation agreement will be employed by a cooperating district or assigned as an exchange teacher.

In short, teachers on unrequested leave of absence must be reinstated pursuant to

---

1. It should be noted that 1989 amendments to section 122.541 have not affected the quoted portion, but do illuminate the essence of the subdivision by entitling it: "Combined Seniority List".

Minn.Stat. 125.12, subd. 6b(e) according to the combined seniority list of teachers mandated by Minn.Stat. 122.541, subd. 5.

■ Finally, examination of the statutes in light of legislative intent and precedent compels the conclusion that the combined seniority list required by Minn.Stat. § 122.541, subd. 5 includes all teachers from both Eveleth and Gilbert who are on ULA whether or not their placement on ULA resulted from implementation of the ICA.

Statutory construction requires that "[w]ords and phrases are construed according to rules of grammar and according to their common and approved usage * * *." Minn.Stat. § 645.08(1) (1988). Thus, to *combine* seniority lists means to join the seniority lists of the two districts into one list. The list coming from Gilbert would have to include Sherek's name because Minn.Stat. § 125.12, subd. 6b(b) mandates seniority lists for teachers placed on ULA, while Minn.Stat. § 125.12, subd. 6b(h) (1988) protects their rights once on such a list. As section 125.12, subd. 6b(h) states:

> The unrequested leave of absence shall not impair the continuing contract rights of a teacher or result in a loss of credit for previous years of service[.]

If Sherek's name did not appear on Gilbert's list, his continuing contract rights would be impaired. Once his name was on Gilbert's list, the two lists could not be combined, i.e., made into one, without his name.

Moreover, this court's consistent interpretation of section 125.12, subd. 6b as providing protection of teachers' employment and seniority rights, *see, e.g., Walter v. Indep. School Dist. No. 457*, 323 N.W.2d 37 (Minn.1982) (citation omitted), coupled with the legislative history of section 122.-541 emphasizing that section's compatibility with existing continuing contract rights, mandates interpretation of the phrase "combined seniority list" to include all those teachers within both districts whether on ULA as a result of an intercooperation agreement or not.

Thus, we hold that Gilbert violated Minn. Stat. § 122.541, subd. 5 and Minn.Stat.

§ 125.12, subd. 6b(b), (e) and (h) when it failed to reinstate Sherek for 1986–87 to available positions within his licensure.

Reversed.

KELLEY, Justice (dissenting):

I respectfully dissent for the reasons stated in Judge Randall's majority opinion in the court of appeals. *Sherek v. Indep. School Dist. No. 699*, 435 N.W.2d 844 (Minn.App.1989).

POPOVICH, C.J., joins in the dissent of KELLEY, J.