Argued September 12, affirmed November 5, 1969

SCHMIDT ET AL, *Appellants, v.* BOLLONS
ET AL, *Respondents.*
460 P. 2d 859

378

*Paul R. Meyer,* Portland, argued the cause for appellants. With him on the briefs were Kobin & Meyer, Portland.

*Morris J. Galen,* Portland, argued the cause for respondents Bollons and Poss. With him on the brief were Tonkon & Galen, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL and GOODWIN, Justices.

O'CONNELL, J.

This is a declaratory judgment action in which plaintiffs seek the construction of a written escrow agreement and the cancellation of a promissory note alleged to have been taken from escrow contrary to the agreement. Plaintiffs appeal from a decree in favor of defendants.

The case turns on the interpretation of a written agreement between plaintiffs Schmidt and Beebe and defendants Bollons and Poss, providing for the release of a promissory note to defendants upon the fulfillment of certain conditions. The agreement was executed under the following circumstances.

Defendants Bollons and Poss, real estate brokers, and plaintiff Schmidt, a building contractor, and plaintiff Beebe, made plans to acquire the Nortonia Hotel in Portland and convert it into an apartment building. They obtained an option to purchase the hotel but they encountered difficulties in financing the conversion. Eventually Bollons and Poss realized that they did not have the money or credit to continue with

the project. Plaintiffs proposed to buy defendants' interest in the venture, which defendants accepted. The agreement for the sale of defendants' interest was reduced to the following writing:

"November 3, 1965

"Bollons & Poss
320 S. W. 6th
Portland, Oregon

Gentlemen:

This will confirm that we will place in escrow at Title Insurance Company a Promissory Note made payable to yourselves in the amount of $20,000.00, dated January 2, 1966, and payable $5,000.00 on or before 90 days after reconstruction of the Nortonia Hotel commences, and the balance payable at not less than $200.00 per month, commencing January 1, 1967. Interest shall accrue at the rate of 6% per annum on the deferred monthly balances, commencing January 2, 1966, and is included in the $200.00 monthly payment. The note will be in standard promissory note form.

This note is given to you as full consideration for any and all interest which you may have in the transaction involving the acquisition of the Nortonia Hotel, including but not limited to any and all services which you may have performed as a real estate broker or agent.

This note is being delivered conditionally upon the following:

1. That the acquisition of the Nortonia Hotel be completed by us on the basis of the option agreement obtained from the present owner.

2. That present arrangements for the interim and permanent financing are consummated.

3. That a building permit substantially consistent with the present plans will be issued by the City of Portland and other related State or Governmental agencies.

The note and this letter shall be delivered to Title Insurance Company, the escrow agent, and become a part of the primary escrow. If the conditions above outlined are not fulfilled, the escrow agent will be directed to return the Promissory Note to us.

By acceptance of this letter noted on the copy, you are confirming the contents hereof and in the event all the conditions for delivery of note are not fulfilled that the note shall have no force and effect and that you waive any and all claims which you may have against the undersigned arising out of the attempted acquisition and financing of the Nortonia Hotel.

> "Very truly yours
> [sgd]   B. B. Beebe
> [sgd]   Aubrey P. Schmidt

Accepted
November 3, 1965
[sgd]   John Bollons
[sgd]   Carl Poss            "

Plaintiffs consummated arrangements for financing the project and then made efforts to obtain a building permit.

The proposal submitted to the city was not accepted and to meet building code requirements it became necessary for plaintiffs to make modifications in the proposed conversion. These modifications substantially increased the cost of the project. Finally the building permit was issued and construction was commenced, whereupon defendants demanded and received the $20,000 note from the escrowee.

Plaintiffs contend that the note should not have been delivered to defendants because the conditions of the November 3rd agreement were not fulfilled.

The principal contention is that there was a failure to fulfill the following condition:

> "That a building permit substantially consistent with the present plans will be issued by the City of Portland and other related State or Governmental agencies."

Prior to the time the parties entered into the agreement of November 3, 1965, drawings and specifications (prepared on October 18, 1965) had been submitted to the city. If the term "present plans" was intended to refer to the October 18th plans and specifications, then the building permit would not be "substantially consistent" with such plans because the evidence revealed that construction under the permit would have required an expenditure of $150,000 to $160,000 more than that necessary to make the conversion under the October 18 plans.

The increase in the over-all cost of converting the hotel into an apartment arose out of additions to the sprinkler, plumbing and heating systems, and other changes made necessary to satisfy city building code requirements.

■ Plaintiffs contend that the building permit based upon these changes was not "substantially consistent with the present plans"—interpreting "present plans" to mean the October 18 plans which had been submitted to the city when the application for a building permit was made.

Defendants take the position that the term "present plans" was not intended to refer to the October 18 plans but to describe the general plan of the parties for converting the hotel into an apartment.

The trial judge also interpreted the term "present plans" to have this latter meaning. We agree with

this interpretation of the agreement. His reasoning is set forth in the following excerpts from his opinion:

"* * * The parties did not use the phrase 'the present plans *and specifications*' but rather used the phrase 'present plans.'

"The parties also used the language 'substantially consistent with' rather than alternate phrases that could be used such as 'based upon,' or 'in accordance with,' or 'identical to,' or some other more narrow phrase.

"* * * [I]f the words 'present plans' are taken to mean the October 18th plans *and specifications,* it seems clear that the requirements imposed by the city for a building permit constituted such a departure that the permit could not be said to be substantially consistent with those of October 18th plans. The evidence was essentially uncontradicted that the city's building permit required the expenditure of perhaps $150,000 to $160,000 more than would have been called for by the October 18th plans *and specifications.*

"But, as Justice Rossman said in *Dorsey v. Oregon Motor Stages,* 183 Or 494 at 505, '* * * words and phrases are Chameleon-like. Their color, significance, and connotation are frequently dependent upon their user.' As a result, 'the use of words frequently presents a greater problem for the interpreter than for the draftsman.' Certainly, such is the case here.

"To learn how the parties themselves interpreted the agreement, we must study how they acted, both before and after it was signed.

"The evidence showed that the previous variances granted by city officials in 1961 plans were not to be repeated in 1965. None of the parties knew this as of November 3, 1965. * * * Not until about the 16th of December, 1965, was it clear that the October 18th plans *and specifications*

would require sizeable and significant changes before winning the city's blessing.

"The litany of these changes need not again be recited. From December 16th, until the council hearing on January 19, 1966, every effort was made by the plaintiffs and, upon their request, by Mr. Bollons to persuade the city officials to *approve significant and substantial* variations in the October 18th plans and specifications. 100% sprinklering is but one of many such variations sought by the parties.

"Mr. Bollons, at the request of Mr. Schmidt, exercised his not inconsiderable hortatory talents, both in chambers and out, to persuade the city council members to approve a building permit which called for 105 units rather than 111, 100% sprinklering, as well as many other significant changes.

"Plaintiffs contend that these very changes were so substantial that any building permit issued by the city on or after the 19th of January would, of necessity, not be 'substantially consistent with the present plans'—i.e. not in compliance with the November 3rd letter-agreement. But would a practical, hard-headed, down-to-earth honest businessman (Mr. Bollons) have enlisted in a city hall crusade, carrying a banner marked '100% sprinklering!' when success would wipe out his $20,000 note? Would Mr. Beebe or Mr. Schmidt, both decent, practical, down-to-earth, hard-headed businessmen, have recruited Bollons for such a task, knowing that the very success of his performance would thereby operate to defeat his $20,000 claim? The answer is 'No' to both. Actions illustrate, as well as illuminate, the words."

We adopt the foregoing reasoning of the trial court. The conduct of the parties after the execution of the writing indicates that they regarded the contract as still subsisting in spite of the fact that sub-

stantial changes would have to be made in the October 18 plans. This conduct constituted a "practical construction" by the parties of the writing.[1]

■ Plaintiffs also contend that the other enumerated conditions of the contract were not fulfilled. We think that the evidence clearly establishes that both of these conditions were fulfilled.

The decree of the trial court is affirmed.

---

[1] Cf., Wheatley v. Carl Halvorson, Inc., 213 Or 228, 323 P2d 49 (1958).