A. J. CHROMY CONSTRUCTION
COMPANY, Appellant,

v.

COMMERCIAL MECHANICAL
SERVICES, INC., Defendant,

Integrity Mutual Insurance
Company, Respondent.

No. 47218.

Supreme Court of Minnesota.

Dec. 9, 1977.

Hoversten, Strom, Ryan, Johnson & Rysavy and Donald E. Rysavy, Austin, for appellant.

Lang & Pauly and R. Thomas Greene, Jr., Minneapolis, for respondent.

Heard before SHERAN, C. J., and TODD and SCOTT, JJ., and considered and decided by the court en banc.

TODD, Justice.

Commercial Mechanical Services, Inc., contracted to perform construction services for the city of Montgomery. A. J. Chromy Construction Company entered into a subcontract agreement with Commercial. Integrity Mutual Insurance Company provided a surety bond to the city of Montgomery covering the contract with Commercial. Commercial became bankrupt and defaulted on the contract. Integrity completed the construction contract and entered into a settlement agreement with the city which was signed on October 6, 1975, and ratified by the Montgomery City Council on October 27, 1975. Chromy filed a claim against the bond on January 12, 1976, which was within the 90-day statutory period for the October 27 date, but outside the 90-day period as to the October 6 date. The trial court granted Integrity's motion for summary judgment. We reverse.

Although the exact amount of the claim is in controversy, the facts essential to this case are not in dispute. Commercial, the general contractor, became insolvent and Integrity was compelled under its surety bond to complete the contract with the city. At that time, Chromy had an unpaid claim against Commercial for services rendered under the subcontract between them. Integrity, as surety, was advised of this fact by letter in January of 1975.

Although the city had occupied the new building in the fall of 1974, a dispute arose between Integrity and the city as to whether the construction was in fact completed according to the terms of the construction contract. This dispute continued unresolved until August 1975, when an agreement of settlement was negotiated by Integrity and the city. The agreement provided among other things that May 15, 1975, would be deemed the date of the project's completion and formal acceptance by the city. At a September 2, 1975, council meeting, a resolution was adopted approving a settlement payment of $1,100 from Integrity and additional sums from others in lieu of certain remedial construction work. There was no additional reference made to the proposed settlement agreement at this meeting other than to instruct the city attorney to get signed agreements from the parties.

Thereafter, the proposed settlement agreement was revised by the parties' attorneys to change the May 15 purported completion and acceptance date to July 15, 1975. The revised agreement was forwarded to the city on September 25 and executed by the mayor and clerk on October 6, 1975. Paragraph 3 of the October 6 agreement provides:

"3. Montgomery agrees forthwith, upon the execution hereof, to deliver to Integrity the retainages and contract balance due on the Agreement in the amount of $21,233.80 *together with a certified copy of the resolution of the Montgomery Council approving, ratifying and confirming this document.*" (Italics supplied.)

On October 27, 1975, the city council adopted the following resolution:

"BE IT RESOLVED:

"That the *proposed* agreement made and entered into by and between the City of Montgomery and Integrity Mutual Insurance Company *is hereby approved* and the appropriate officers of the City of Montgomery *are authorized and instructed to execute the same* by and in behalf of the City of Montgomery. A copy of said agreement is attached hereto and made a part hereof." (Italics supplied.)

On January 12, 1976, Chromy filed its written claim on the bond with the county auditor pursuant to the provisions of Minn.St. 574.31.[1] January 12 is 98 days after October 6, but 77 days after October 27. Based on these facts, the trial court held the statutory date of acceptance to be October 6, 1975, and granted Integrity's motion for summary judgment on the ground that Chromy's claim against the bond had not been timely filed under the statute and was therefore barred. A motion to vacate the judgment was denied and Chromy appealed.

The issues on appeal are:

(1) Were there factual disputes which made the entry of summary judgment improper?

(2) Was Chromy's notice of January 12, 1976, timely as a matter of law?

■ 1. Chromy argues that because a ruling on the timeliness of its notice of claim involved the resolution of factual issues, the trial court should not have considered Integrity's motion for summary judgment. We disagree. As we noted above, the operative facts of this litigation are not disputed. In its ruling, the trial court had only to apply the pertinent language of Minn.St. 574.31 to the undisputed facts. Summary judgment was a fully appropriate procedural vehicle for the consideration of that question.

■ 2. Considering the second issue raised on this appeal, we commence with the basic proposition that the purpose of the statute requiring performance bonds on public projects is—

" * * * to protect laborers and materialmen who perform labor or furnish material for the execution of a public work to which the mechanic's lien statute does not apply." *Ceco Steel Products Corp. v. Tapager,* 208 Minn. 367, 370, 294 N.W. 210, 212 (1940).

See, *Weyerhaeuser Co. v. Twin City Millwork Co.,* 291 Minn. 293, 301, 191 N.W.2d 401, 405 (1971); *Wheeler Lumber B. & S. Co. v. Seaboard Surety Co.,* 218 Minn. 443, 449, 16 N.W.2d 519, 522 (1944).

Mindful of the purpose underlying § 574.-31, we must examine the four dates which could, under the facts of this case, be deemed the date of acceptance which began the running of the statutory period for filing claims. The possible dates are July 15, 1975, September 2, 1975, October 6, 1975, and October 27, 1975.

■ The settlement agreement ultimately entered into between Integrity and the city purported to backdate the official completion and acceptance of the new construction to July 15, 1975. Integrity argues that this date should control for the purposes of § 574.31—a position which the trial court correctly rejected. Adoption of Integrity's argument in theory would allow the parties to a construction contract to backdate acceptance far enough to actually eliminate

1. Minn.St. 574.31 provides as follows: "No action shall be maintained on any such bond unless within 90 days after the completion of the contract and acceptance thereof by the proper public authorities, the claimant shall file a written notice specifying the nature and amount of his claim and the date of furnishing the last item thereof, in the office of the commissioner of insurance, in case the contract is for the performance of work for the state or any department thereof, and, in case the contract is let by any county, municipal corporation, or other public board or body, then such notice shall be filed in the office of the auditor of the county letting the contract or the county in which such municipal corporation, public board or body is situate, and if situate in two or more counties, then such notice shall be filed in the office of the auditor of each county; nor unless the action is begun within one year after the filing of such notice. * * *"

the 90-day notice period and thereby bar any claims against the performance bond. It is hornbook law that no one by contract may barter away the rights of persons not privy to the contract. To hold otherwise in this case would seriously diminish the protection which the legislature has afforded laborers and materialmen in § 574.31.

This precise question was considered by the Oregon Supreme Court in *Virginia Glass Products Corp. v. Glens Falls Ins. Co.,* 254 Or. 340, 460 P.2d 858 (1969). In that case, the Oregon State Board of Control adopted a resolution on February 24 which retroactively accepted construction of a state building as of February 4, the final inspection date. Pursuant to the Oregon statute, a materialman filed a notice of claim which was timely with respect to a February 24 acceptance, but tardy under a February 4 acceptance. The court said (254 Or. 343, 460 P.2d 859):

> " * * * [A] public body may not retroactively start the time running. To hold otherwise would be to open the door for a public body to circumvent the statute."

We agree.

Likewise, the statutory acceptance of the new construction did not occur on September 2, 1975. Examination of the minutes of the September 2 city council meeting reveals that the council accepted the payment of certain sums from two minor subcontractors and a $1,100 payment from Integrity in lieu of certain remedial construction work. However, the minutes contain nothing which would indicate that any semblance of a full and complete settlement agreement was either presented, adopted, or ratified at the September 2 meeting.

■ Of the two remaining dates, the trial court found that October 6 rather than October 27 was the date of the city's acceptance. In so doing, the court applied the language of § 574.31 to a set of undisputed facts. Therefore, its conclusion was one of law and does not bind this court. *In re Trust Known As Great Northern Iron Ore Properties,* 308 Minn. 221, 243 N.W.2d 302 (1976); *Southern California Edison Co. v. State Bd. of Equal.,* 7 Cal.3d 652, 102 Cal. Rptr. 766, 498 P.2d 1014 (1972). We think the trial court incorrectly applied § 574.31, and that October 27 must be deemed the date of statutory acceptance.

■ In arriving at this conclusion, we note first that the agreement of October 6 was clearly conditional. Paragraph 3 of the agreement, previously quoted, required a certified copy of the resolution of the council "approving, ratifying and confirming" the agreement. Integrity, as a party to the contract, obviously felt this was an additional necessity. Even more illustrative of the conditional nature of the October 6 execution is the subsequent action of the Montgomery City Council. At the October 27 meeting, the matter was submitted to the council as a "proposed agreement." The resolution of the council, previously quoted, states that " * * * the proposed agreement * * * is hereby approved." The language is most clear. As of October 27, the agreement executed on October 6 was still in the form of a proposal. The action of the city council on October 27 was phrased in the present tense. Anyone examining these records would have to be privy to inside information in order to conclude that the date of acceptance was not October 27.[2] Thus, we hold that the date of acceptance was October 27, 1975, and that Chromy's filing of the claim was timely under § 574.31.

The judgment in favor of Integrity is vacated and the matter remanded to the trial court for further proceedings consistent with this opinion.

OTIS, J., took no part in the consideration or decision of this case.

2. Indeed, in a phone call to the city clerk's office, Chromy's counsel was specifically informed that acceptance had occurred on October 27.

WAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.