**Steven ARMSTRONG, Appellant,**

**v.**

**CIVIL SERVICE COMMISSION OF THE CITY OF ST. PAUL, et al., Respondents.**

No. C9–92–1783.

Court of Appeals of Minnesota.

April 6, 1993.

Review Denied May 28, 1993.

William L. Tilton, George R. Dunn, Tilton and Rosenbaum, St. Paul, for appellant.

Natalie E. Hudson, St. Paul City Atty., Thomas J. Weyandt, Asst. St. Paul City Atty., St. Paul, for respondents.

. Carla J. Heyl, St. Paul, for amicus curiae.

Considered and decided by HUSPENI, P.J., and RANDALL and PETERSON, JJ.

## OPINION

RANDALL, Judge.

In January of 1987, appellant Steven Armstrong, an employee of respondent City of St. Paul (city), petitioned the St. Paul Civil Service Commission for reconsideration of his employee status. He also sought "equitable compensation" pursuant to the Minnesota Pay Equity Act (MPEA), Minn.Stat. §§ 471.991–.999 (1988). After a hearing, the Commission found that even though appellant had acquired the skills of a building inspector, his job required only the skills of code enforcement. The Commission ordered that appellant's employee status remain the same.

Appellant commenced this action in district court by filing a summons and petition for certiorari and writ of mandamus seeking reversal of the determination of the Civil Service Commission. By order dated June 29, 1992, the trial court granted summary judgment dismissal in favor of respondents.[1] This appeal is taken from the judgment entered on July 8, 1992. We affirm.

## FACTS

The facts are undisputed. Appellant has been employed by respondent City of St. Paul since November of 1983. The parties agree the city is a political subdivision and a public employer for the purposes of the Minnesota Pay Equity Act (MPEA), Minn. Stat. §§ 471.991–.999, which was originally enacted in August of 1984. *See* 1984 Minn. Laws ch. 651.

Since July of 1986, appellant has worked in the fire prevention division of the city's fire and safety services department doing certificate of occupancy inspections. Appellant's title is Fire Prevention Inspector I. For purposes of the MPEA, appellant's class of employment is considered a "balanced class," (as opposed to a female-domi-

---

1. The Civil Service Commission was dismissed from the action by stipulation of all parties at the hearing before the trial court.

nated class or male-dominated class).[2] *See* Minn.Stat. § 471.991, subd. 2 (1988). Appellant and the other eight employees in his class are represented by AFSCME Council 14 for the purposes of collective bargaining with the city.

Appellant works side by side with employees who have the title "Trades Inspectors." This title is based upon the fact they are members of various trade unions. They are also all members of a male-dominated class. There is evidence that the day to day duties of appellant and trades inspectors are the same most of the time. However, trades inspectors make $5000 to $15,000 more per year than appellant.

In November of 1987, appellant brought the matter of the pay differential to the Civil Service Commission. The issue of the MPEA was not raised at that hearing. The Civil Service Commission found that appellant had acquired the skills of a building inspector but that his job required the skills of code enforcement only. The Commission denied appellant's request for an upgrading of his position and an increase in pay. Appellant testified that he brought the matter of this alleged pay disparity to his union representative but his union representative was unwilling to pursue the matter.

This action was commenced in district court in January of 1988 by service of a summons and "petition of writ of certiorari and writ of mandamus." Before discovery was commenced, appellant brought a motion for writ of mandamus reversing the Civil Service Commission and for back pay and a motion for summary judgment on the MPEA claim. Those motions were denied by order of the trial court dated September 5, 1989, and no appeal was taken from that decision. All discovery in this lawsuit has occurred since the date of that order and memorandum.

This appeal is from a judgment entered on July 8, 1992, pursuant to the trial court's order granting respondent city's motion for summary judgment of dismissal.

## ISSUES

1. May appellant, as a member of a "balanced class," bring a cause of action against respondent to contest a perceived unfair wage pursuant to the MPEA in the absence of gender-based wage disparity?

2. May an individual, as opposed to a "class" of employees, bring a cause of action to contest a perceived unfair wage pursuant to the MPEA?

## ANALYSIS

The complaint pleads for relief under two sections of the MPEA. Appellant first claims relief under Minn.Stat. § 471.992, subd. 1 (1988). This section calls for the establishment of equitable compensation relationships between female-dominated, male-dominated, and balanced classes of employees. Appellant's second claim for relief arises under Minn.Stat. § 471.993, subd. 1 (1988). This section requires that in preparing management negotiating positions for compensation established through collective bargaining, political subdivisions "assure" that compensation bear reasonable relationship among related job classes and among various levels within the same occupational group.

At the time this action was commenced, January of 1988, the MPEA remained essentially the same as the original legislation enacted in 1984. However, the act

---

2. The act defines three classes of employees: "balanced class," "female-dominated class," and "male-dominated class."

    "Balanced class" means any class in which no more than 80 percent of the members are male and no more than 70 percent of the members are female.

    \*   \*   \*   \*   \*   \*

    "Female-dominated class" means any class in which more than 70 percent or more of the members are female.

    "Male-dominated class" means any class in which 80 percent or more of the members are male.

Minn.Stat. § 471.991, subds. 2, 6, 7 (1988).

was substantially amended in 1990, effective August 1, 1990. *See* 1990 Minn.Laws ch. 512.

Appellant is a male and a member of a "balanced class." *See* Minn.Stat. § 471.-991, subd. 2 (1988). ·The trial court dismissed appellant's claims on summary judgment based on its conclusion that appellant is not within the class of persons which the act was designed to protect, namely, persons in "female-dominated" classes. *See* Minn.Stat. § 471.991, subd. 6 (1988). The trial court concluded the legislative purpose of the act is the equalization of wage rates that have been made disparate by gender-based differences: The trial court based this conclusion on changes in the 1990 legislation indicating legislative intent. The trial court also concluded the MPEA does not provide a mechanism for individual causes of action. Rather, the trial court held, any action brought pursuant to the MPEA must necessarily involve a class or classes of employees. The trial court granted summary judgment in favor of respondent city.

On review of summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). This court need not defer to the trial court's interpretation of a statute, which is a question of law. *A.J. Chromy Constr. Co. v. Commercial Mechanical Servs., Inc.*, 260 N.W.2d 579, 582 (Minn. 1977).

## I.

The MPEA, also referred to as the comparable worth statute, Minn.Stat. § 471.-991–.999, requires public employers to determine the comparable work value of all employment positions. *See* Minn.Stat. § 471.994; *Holmes v. Board of Comm'rs*, 402 N.W.2d 642, 647 (Minn.App.1987).

The 1988 version of the act provided:

Subdivision 1. **Establishment.** Subject to sections 179A.01 to 179A.25 [Minnesota Public Employees Labor Relations Act (MPELRA)] but notwithstanding any other law to the contrary, every political subdivision of this state shall establish equitable compensation relationships between. female-dominated, male-dominated, and balanced classes of employees.

Subd. 2. **Arbitration.** In all interest arbitration held pursuant to sections 179A.01 to 179A.25 [MPELRA], the arbitrator shall consider the equitable compensation relationship standards established in this section, the standards established under section 471.993 together with other standards appropriate to interest arbitration. The arbitrator shall consider both the results of a job evaluation study and any employee objections to the study.

Minn.Stat. § 471.992, subds. 1, 2 (1988). In 1990, section 471.992 was amended in relevant part to read as follows:

Subdivision 1. **Establishment.** Subject to sections 179A.01 to 179A.25 [MPELRA] * * * but notwithstanding any other law to the contrary, every political subdivision of this state shall establish equitable compensation relationships between female-dominated, male-dominated, and balanced classes of employees *in order to eliminate sex-based wage disparities in public employment in this state. A primary consideration in negotiating, establishing, recommending, and approving compensation is comparable work value in relationship to other employee positions within the political subdivision. This law may not be construed to limit the ability of the parties to collectively bargain in good faith.*

Subd. 2. **Arbitration.** In all interest arbitration *involving a class other than a balanced class* held *under* sections 179A.01 to 179A.25 [MPELRA], the arbitrator shall consider the equitable compensation relationship standards established in this section and the standards established under section 471.993, together with other standards appropriate to interest arbitration. The arbitrator shall consider both the results of a job evaluation study and any employee objections

to the study. *In interest arbitration for a balanced class, the arbitrator may consider the standards established under this section and the results of, and any employee objections to, a job evaluation study, but shall also consider similar or like classifications in other political subdivisions.*

Minn.Stat. § 471.992, subds. 1, 2 (1990) (emphasis added to amendment).

The 1988 version of the statute provides the following definition of "equitable compensation relationship:"

"Equitable compensation relationship" means that a primary consideration in negotiating, establishing, recommending, and approving total compensation is comparable work value in relationship to other employee positions within the political subdivision.

Minn.Stat. § 471.991, subd. 5 (1988). The 1990 amendments changed the definition of "equitable compensation relationship" to the following:

"Equitable compensation relationship" means that *the compensation for female-dominated classes is not consistently below the compensation for male-dominated classes of comparable work value, as determined under section 471.994,* within the political subdivision.

Minn.Stat. § 471.991, subd. 5 (1990) (emphasis added to amendment).

Minn.Stat. § 471.994 (1988) provided:

Every political subdivision shall use a job evaluation system in order to determine the comparable work value. The political subdivision may use the system of some other public employer in the state. Each political subdivision shall meet and confer with the exclusive representatives of their employees on the development or selection of a job evaluation system.

Section 471.994 was amended in 1990 to provide:

Every political subdivision shall use a job evaluation system in order to determine the comparable work value *of the work performed by each class of its employees. The system must be main-*tained and updated to account for new employee classes and any changes in factors affecting the comparable work value of existing classes. * * * The political subdivision may use the system of some other public employer in the state. Each political subdivision shall meet and confer with the exclusive representatives of their employees on the development or selection of a job evaluation system.

Minn.Stat. § 471.994 (1990) (emphasis added to amendment).

Furthermore, Minn.Stat. § 471.9981, subd. 6 (1988), detailing enforceable penalties which may be imposed upon the political subdivision *by the state* for noncompliance, provides, in part:

The commissioner may waive the penalty upon making a finding that the failure to implement was attributable to circumstances beyond the control of the governmental subdivision or to severe hardship.

In 1990, this same section was amended to read in part:

The commissioner of employee relations may suspend the penalty upon making a finding that * * * *noncompliance results from factors unrelated to the sex of the members dominating the affected classes * * *.*

Minn.Stat. § 471.9981, subd. 6(c) (1990) (emphasis added to amendment).

Based upon the 1990 amendments, the trial court concluded that appellant, a member of a balanced class (as opposed to a male-dominated or female-dominated class member), was not within the class of persons intended to benefit from the act, namely persons in female-dominated classes. The trial court concluded that the legislative purpose of the act is the equalization of wage rates that have been made disparate by gender-based differences. We agree.

The most telling change made by the 1990 amendments is in the definition of "equitable compensation relationship." The 1988 version of the statute gave the following definition of "equitable compensation relationship:"

"Equitable compensation relationship" means that a primary consideration in negotiating, establishing, recommending, and approving total compensation is comparable work value in relationship to other employee positions within the political subdivision.

Minn.Stat. § 471.991, subd. 5 (1988). The 1990 amendments changed the definition of "equitable compensation relationship" to the following:

"Equitable compensation relationship" means that *the compensation for female-dominated classes is not consistently below the compensation for male-dominated classes of comparable work value, as determined under section 471.994,* within the political subdivision.

Minn.Stat. § 471.991, subd. 5 (1990) (emphasis added to amendment).

The legislature's express purpose in requiring public employers to establish equitable compensation relationships is *"to eliminate sex-based wage disparities in public employment."* *See* Minn.Stat. § 471.992, subd. 1 (1990) (emphasis added). The definition of "equitable compensation relationship," as amended, makes no reference to "balanced classes." *See* Minn.Stat. § 471.991, subd. 5 (1990).

The legislature intended to address sex-based wage disparities between members of male-dominated versus female-dominated classes, and the act was intended to operate in favor of female-dominated classes. The legislature was not attempting to eliminate perceived wage disparities for everyone in the state, regardless of gender. That would be an impossible task and an impermissible infringement on the right of labor and management to independently negotiate. There needs to be a bona fide state interest such as gender-based wage disparity before the state can tell a political subdivision what to pay a worker. Mere worker dissatisfaction is not enough. The legislature was not focusing on balanced classes because balanced classes, by definition, are neither male nor female dominated.

An example of gender-based wage disparity would be when a type of job which has been historically male-dominated pays two to three times more than a type of job which has been historically female-dominated *and* the only reasonable explanation for the wage disparity is that the first type of job has traditionally been referred to, by society as a whole, as a "man's job" and the latter type of job has been traditionally referred to as "woman's work." This is the situation the MPEA was intended to correct.

The act was not created for the purpose of equalizing wages between two jobs where wage disparity is due to factors other than gender, such as the strength of one union's power in bargaining with management versus the strength of another. For example, in some cities there may be wage disparity between firefighters and police officers. Assume, for the sake of discussion, that both positions are considered approximately equal in terms of worth and required skills. Then assume that in the cities in question, positions in both have historically been male-dominated. The MPEA does not address this wage disparity. The MPEA was not created to ensure that firefighters and police officers receive comparable pay, even if all agree they do comparable work, unless females in those positions are on a negative pay scale traceable only to gender.

We affirm the trial court's conclusion the MPEA does not provide a cause of action for appellant. Appellant does not allege wage disparity based on gender. Appellant simply feels his job should pay more because much of his work is similar to work done by men in another job class with higher pay.

## II.

The trial court concluded the MPEA does not provide a mechanism for individual causes of action. The trial court determined that section 471.992 calls for equitable compensation relationships between *classes* of employees. Thus, the trial court held, any action brought pursuant to section 471.992 must necessarily deal with an

entire class of employees. In concluding appellant could not bring an individual cause of action under the MPEA, the trial court stated:

> [Appellant] seeks compensation for his own individual harm. This harm is not addressed by the Act. The legislature did not write this Act to encompass individual harm; instead, it allowed [political] subdivisions to comply based upon results obtained *per class*. This has the result of allowing variations within a class, as long as the class averages out to an acceptable level. While [appellant] may be paid an amount that is lower than what is contemplated by notions of pay equity, other members of his class may be paid more than that amount. Such a situation would leave the [political] subdivision in compliance with the Act.

Minn.Stat. § 471.992, subd. 1 (1988) provides:

> Subdivision 1. **Establishment.** *Subject to sections 179A.01 to 179A.25 [Minnesota Public Employees Labor Relations Act (MPELRA)]* but notwithstanding any other law to the contrary, every political subdivision of this state shall establish equitable compensation relationships between female-dominated, male-dominated, and balanced classes of employees.

> Subd. 2. **Arbitration.** In all interest arbitration held pursuant to sections 179A.01 to 179A.25 [MPELRA], the arbitrator shall consider the equitable compensation relationship standards established in this section, the standards established under section 471.993 together with other standards appropriate to interest arbitration. The arbitrator shall consider both the results of a job evaluation study and any employee objections to the study.

Section 179A.01 to 179A.25 (1988) is the Minnesota Public Employment Labor Relations Act (MPELRA), which provides a mechanism for negotiations and dispute resolution between public employees and employers. Thus, pursuant to section 471.-992, the MPEA must be read and applied within the parameters of the MPELRA. *See* Minn.Stat. § 471.992, subd. 1 ("Subject to sections 179A.01 to 179A.25 [MPELRA]" * * *.)

Minn.Stat. § 471.993 (1988) provides in part that a public employer shall "assure," in preparing management negotiation positions for compensation established through collective bargaining,

> compensation for positions within the employer's work force bear reasonable relationship among related job classes and among various levels within the same occupational group.

Minn.Stat. § 471.993, subd. 1(3); *see also* Minn.Stat. § 471.993, subd. 2 ("reasonable relationship" defined).

■ We agree with the arguments of respondent city and Amicus Curiae League of Minnesota Cities that implementation of the MPEA occurs through the labor negotiation process. The public employer is required to prepare a *management negotiation position* which considers the factors set out in subdivision two of section 471.-993 (skill, effort, responsibility, working conditions and other relevant criteria). This negotiation position is only a starting point. The employer and a union are free to subsequently negotiate from that starting position and may also give consideration to other terms and conditions of employment beyond pure monetary compensation, such as health insurance benefits and vacation time. As such, a union and employer are able to trade off various terms and conditions of employment, even though they must consider the MPEA. We believe the legislature expressly placed the provisions of the MPEA within the provisions of the MPELRA so as to maintain the integrity of this negotiation process.

On September 15, 1986, appellant's certified bargaining agent, AFSCME, entered into a labor contract with the city. The preamble to the contract states:

> This AGREEMENT entered into by the City of Saint Paul * * * and Local UNION 1842 * * * has as its purpose the promotion of harmonious relations between the employer and the UNION, the establishment of rates of pay, hours of

work, and other conditions of employment.

Article 1.1 of the contract states that the city "recognizes the union as the sole and exclusive bargaining agent for the purpose of establishing salaries, wages, hours, and other conditions of employment for all of its employees * * *." The issue of appellant's wages were addressed by the union through the negotiating of appellant's employment contract with the city.

Appellant's complaint of an unfair wage lies with his collective bargaining unit. The collective bargaining unit, in turn, could have a cause of action under the MPEA if an entire "class" of employees is affected by a perceived unfair wage based upon gender.

 Appellant argues that an individual does have a cause of action under the MPEA by virtue of the language contained in Minn.Stat. § 471.9975 (1988), which provides:

> No cause of action arises before August 1, 1987 for failure to comply with the requirements of [the MPEA].[3]

We hold that any cause of action under the MPEA must involve an aggrieved *class*.

In addition to the parameters of MPELRA, there is further support in the statute for our conclusion that the MPEA does not provide a mechanism for an individual cause of action. Minn.Stat. § 471.994 (1988), which requires each political subdivision to use a job evaluation system in order to determine comparable work value, was amended in 1990 to provide in part:

> Every political subdivision shall use a job evaluation system in order to determine the comparable work value *of the work performed by each class of its employees. The system must be maintained and updated to account for new employee classes and any changes in factors affecting the comparable work value of existing classes.*

Minn.Stat. § 471.994 (1990) (emphasis added to amendment). Under the amendment, the job evaluation system applies to work performed by each *class* of employees, rather than each individual employee.

Based upon the statute as a whole, we agree with the trial court that any cause of action necessarily applies to a class of employees, rather than an individual member of a class.

### DECISION

We affirm the decision of the trial court granting summary judgment of dismissal in favor of the city.

**Affirmed.**

---

3. Section 471.9975 has remained the same since the MPEA was originally enacted in 1984.