Thomas VEERKAMP, et al., Appellants,

v.

FARMERS COOPERATIVE CREAMERY OF FORESTON, MINNESOTA, defendant & third–party plaintiff, Respondent,

v.

Robert VEERKAMP, et al., Third–Party Defendants.

No. C9–97–1236.

Court of Appeals of Minnesota.

Jan. 15, 1998.

Paul N. Muske, Kevin L. Erickson, Muske, Muske & Clarke, Chartered, Springfield, for appellants.

James W. Hess, Terpstra, Black, Brandell & Hoffman, Elk River, for respondent.

Considered and decided by TOUSSAINT, C.J., and RANDALL and FORSBERG, JJ.

**OPINION**

THOMAS G. FORSBERG, Judge.*

In challenging summary judgment and dismissal of their breach of contract claim, appellants contend the district court failed to interpret the assignments of produce in conjunction with the farm lease that prohibited cash advances and established their breach of contract claim. We affirm.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. Art VI, § 2.

## FACTS

Appellants Thomas and Pauline Veerkamp owned and operated a small dairy farm in Mille Lacs County, Minnesota. On February 24, 1993, their son, respondent Robert Veerkamp, and his wife, Gayle Veerkamp (son and daughter-in-law), purchased the dairy herd from appellants and leased their dairy facility, real estate, and machinery. At that time, appellants owed the bank $98,910.77 for the dairy herd and machinery. Appellants divided the indebtedness into two promissory notes in the transaction with their son and daughter-in-law: one promissory note for $85,000 to cover the sale price of the dairy herd and another promissory note for $13,910.77 to cover the balance of the indebtedness. The bank would not extend credit directly to the son and daughter-in-law and would only approve the transaction if appellants remained liable for the indebtedness. Consequently, appellants co-signed the $85,000 promissory note and were the sole signatories on the second promissory note.

The lease for the dairy facility, real estate, and machinery included this provision regarding the financing of the dairy herd:

Seller/buyer agree on a loan of $85,000 to First National Bank of Milaca to be repaid via milk assignment from Farmers Co-op Creamery, Foreston, Minnesota, of $3,500 per month payable for the term of 36 months. The balance at that time will become Robert's loan or paid in full. There shall be no cash advances on milk sales from Farmers Co-op Creamery, Foreston, Minnesota.

Once the son and daughter-in-law took possession of the dairy operation, all milk produced became their property. To secure repayment of the purchase price of the farm and the dairy herd, the son and daughter-in-law drafted assignments of produce in which they agreed to continue selling and delivering milk, cream, and butterfat to respondent Farmers Cooperative Creamery (Farmers Coop) and assigned $725 per month from milk proceeds to repay the bank for their indebtedness. Similarly, they signed a second assignment of produce assigning $3,500 per month from milk proceeds to repay their indebtedness. These assignments of produce did not mention or in any way incorporate the prohibition on cash advances that appellants had included in their lease with their son and daughter-in-law.

As a standard course of dealing, Farmers Coop allowed farmers to take cash advances against their milk proceeds in any given month and, consequently, allowed the son and daughter-in-law to do the same here. In fact, between February 1993 and the end of July 1995, Farmers Coop repeatedly made cash advances to son and daughter-in-law or paid with milk proceeds for purchases of products from the Coop. The custom and practice of Farmers Coop was to distribute the balance of milk proceeds to the creditors under the assignment of produce once all cash advances and product purchases had been deducted.

As a result, although the son and daughter-in-law's milk proceeds totaled $131,379.57 in 1994, Farmers Coop paid only $21,140.40 of the $42,000 due to the bank under the assignment of produce, because the son and daughter-in-law had taken the rest of the proceeds by way of cash advances or purchase of goods from the Coop. Similarly, Farmers Coop forwarded only $7,612.50 of the $8,700 due on the farm lease. Thus, in 1994, the bank received $20,859.60 less and appellants received $1,087.50 less than they were scheduled to receive under the assignments of produce. 1995 presented a comparable problem.

As of August 1, 1995, the son and daughter-in-law ceased the dairy operation. They sold the remaining dairy herd and applied the proceeds to pay the indebtedness to the bank. Even after that payment, however, a $31,069.54 balance remained due. This balance became appellants' responsibility because they had cosigned the loan and agreed to assume financial responsibility in the event that the son and daughter-in-law defaulted.

Appellants contend that they visited Farmers Coop shortly after the initial transfer of the farm to the son and daughter-in-law and informed Virginia Braaten, Coop employee, of the transfer in the dairy operation. They also contend they told her about the assignments of produce to secure payment to the

bank and the lease's prohibition of cash advances from the Coop to the son and daughter-in-law. Appellants further allege that they revisited Farmers Coop early in 1995 when they learned that the bank had not been paid in full in 1994. Again, they advised Braaten that the farm lease prohibited the son and daughter-in-law from receiving cash advances from Farmers Coop. Braaten, however, recalled that appellants never gave Farmers Coop a copy of the lease in conjunction with the assignments of the produce. Braaten also said that Farmers Coop's custom and practice was to forward milk proceeds to the bank after deducting any purchases or cash advances made by the farmer, as had occurred here.

In February 1996, as appellants sought to straighten out these affairs, the bank assigned its promissory note and security interest to appellant Thomas Veerkamp.

Appellants brought this action alleging that Farmers Coop breached the assignments of produce by failing to pay the bank first out of the milk proceeds. Farmers Coop defended its standard business practice and argued that it was not aware that the lease between appellants and their son prohibited cash advances from the milk proceeds.

After a hearing on crossmotions for summary judgment, the district court granted Farmers Coop's motion, denied appellants' motion, and dismissed appellants' complaint with prejudice. The court later took under advisement appellants' motion to amend the findings of fact and the order, but made no ruling.

## ISSUE

Did Farmers Coop have an obligation to pay the bank from milk proceeds before it paid any amounts the son and daughter-in-law owed the Coop, making summary judgment improper?

## ANALYSIS

On review of summary judgment, this court must determine whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn.1992). This court must review the facts in a light most favorable to the party against whom judgment was entered. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

Appellants contend that the district court erred when it failed to interpret the assignments of produce in conjunction with the farm lease that prohibited son and daughter-in-law from receiving cash advances. Interpretation of a contract is a question that this court determines de novo. *See Marso v. Mankato Clinic, Ltd.,* 278 Minn. 104, 114, 153 N.W.2d 281, 288 (1967) (interpretation of unambiguous contract is question for court); *see also A.J. Chromy Constr. Co. v. Commercial Mech. Servs., Inc.,* 260 N.W.2d 579, 582 (Minn.1977) (appellate court reviews questions of law de novo).

The farm lease was a separate document from the assignments of produce. The assignments of produce were agreements between son and daughter-in-law and Farmers Coop. The farm lease, however, was an agreement between appellants and son and daughter-in-law; Farmers Coop was not a party to the farm lease. Only a party to a contract may move to enforce it. *Northern Nat'l Bank of Bemidji v. Northern Minn. Nat'l Bank of Duluth,* 244 Minn. 202, 208, 70 N.W.2d 118, 123 (1955) (stranger to contract has no rights under contract); *Anderson v. First Northtown Nat'l Bank,* 361 N.W.2d 116, 118 (Minn.App.1985) (same); *see also Minneapolis Cablesystems v. City of Minneapolis,* 299 N.W.2d 121, 122 (Minn.1980) (valid contract requires meeting of parties' minds regarding essential contract elements).

Not being a party to the farm lease, Farmers Coop was not privy to its terms and was not informed of son and daughter-in-law's obligations under that agreement. Furthermore, the Coop had not bargained for the portion of the lease that would have required it to curb its accounts receivables by declining to advance cash to son and daughter-in-law. *See Minneapolis Cablesystems,* 299 N.W.2d at 122 (valid contract requires meeting of minds on essential terms); *Restatement (Second) of Contracts* § 17

(1981) (contract requires bargain in which parties manifest mutual assent to terms). Finally, Farmers Coop did not have notice of appellants' lease provision prohibiting cash advances. The assignments of produce did not include any reference to the lease or the prohibition against cash advances, nor did appellants give Farmers Coop a copy of the lease to inform them of the prohibition.

The matter is further complicated by the fact that Farmers Coop made a standard business practice of tendering cash advances against milk proceeds and taking set-offs. Farmers Coop argues that it owed the parties no other duty, given that they were aware of this course of dealing. We agree.

> A course of dealing between parties and any usage of trade * * * of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement.

Minn.Stat. § 336.1–205(3) (1996). At the time the bank entered the assignment of produce agreements, it understood that Farmers Coop took set-offs on cash advances before it paid on the assignment. The banker commented that, although the bank had "a problem" with Farmers Coop's policy of treating cash advances as accounts receivable, the bank did not "make an issue with the creamery." Thus, the bank accepted the Coop's business practice.

Appellants now stand in the bank's shoes as assignees of the bank's rights to repayment of indebtedness. Appellants admitted that they were aware of the Coop's business practice of giving cash advances and were concerned how it might affect the cash flow for repayment of debt here. Accepting as true appellants' statement of facts, we must assume that appellants did speak to Braaten shortly after the sale and lease took effect in 1994 and again in 1995. Those conversations, however, had no binding effect on Farmers Coop. The situation would have been different if appellants, son and daughter-in-law, the bank, and Farmers Coop had sat down together and renegotiated the manner in which the Coop operated its assignments of produce in this case. Had the Coop been involved from the beginning as a party to a newly-crafted agreement, wherein the Coop agreed not to advance cash to son and daughter-in-law, then appellants would have a viable contractual argument. On the record here, however, their claim of breach fails.

The facts of this case are unfortunate and have been costly to appellants. Appellants foresaw problems with the cash advances when they first negotiated the farm lease with their son and daughter-in-law. The problem of policing the son and daughter-in-law's spending, purchasing, and budgeting habits, however, did not rest with Farmers Coop.

The district court properly determined that no fact issues remained for trial and granted summary judgment in favor of Farmers Coop.

## DECISION

Farmers Coop did not breach the assignments of produce simply because it allowed son and daughter-in-law cash advances. Farmers Coop's standard business practice was to allow cash advances against milk proceeds, take set-offs, and then pay on the assignment. Farmers Coop was not a party to the farm lease that prohibited cash advances nor was that lease incorporated into the assignments of produce. Under these circumstances, summary judgment for Farmers Coop was proper.

**Affirmed.**